THURSTON, Respondent, vs. THE BURNETT & BEAVER DAM FARMERS' MUTUAL FIRE INSURANCE COMPANY, Appellant.

*January 19 — February 8, 1898.*

*Insurance against fire: Construction of policy: Use of wood in engine: Court and jury.*

1. Under the rule that where the language of a contract is plain and unambiguous, and where words or terms in a contract may be reasonably construed in either of two ways but extrinsic evidence is not resorted to for the purpose of aiding in the construction, the proper construction of the contract is for the court, the proper construction of language in an insurance policy, to the effect that the insurer would not be liable for loss by "fires caused by the use of steam engines on the premises insured, other than threshing machine engines using coal for fuel, with sufficient wood to kindle or start the fire," was a question solely for the court.

2. Such clause prohibited the use of wood, except to efficiently start combustion in the coal; the use of wood thereafter was within the excepted risk; and when wood was so used, up to a short time before the fire occurred, such fire was not caused by an engine "using coal for fuel with sufficient wood to kindle or 'start the fire," because coal was the last fuel put into the fire-box before the fire occurred.

3. The evidence being to the effect that wood was used to make power for a considerable length of time, and then coal was put into the furnace as needed, and as a helper, for about fifteen minutes, which disappeared before the fire occurred, such fire was clearly within the excepted risk, and there was no question on the subject to be left to the jury.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Dodge county: A. SCOTT SLOAN, Circuit Judge. *Reversed.*

Action to recover on two policies of fire insurance. The property destroyed was grain in stacks. The fire was started by sparks from a threshing machine engine in operation on the premises. A by-law formed a part of each contract of insurance, which was as follows: "This company will not hold itself liable for loss caused by the use of steam engines.

on the premises, except steam threshing engines using coal as fuel, with sufficient wood to kindle or start the fire." The principal disputed question on the pleadings and evidence was whether the fire occurred through a cause not covered by the contracts of insurance, by reason of the by-law referred to.

A special verdict was ordered, containing questions covering the subject in dispute, such questions being as follows: "(1) What was being used for fuel in the engine when the stacks of wheat were destroyed? (2) Was more wood used in the engine than was sufficient to kindle or start the fire in the engine? (3) At the time of the fire, was wood being used to produce power to run the engine?"

The court instructed the jury, among other things, that there is not any great conflict in the evidence. "The question is, Do you find for the plaintiff or the defendant? If the plaintiff was using, at the time the fire occurred, wood for the purpose of producing power to do the threshing, he cannot recover. If he was only using wood for the purpose of kindling or starting the fire, if it had got down, he can recover." In respect to the second question the court said: "You are to determine from the language what was intended,— what is the fair, reasonable, ordinary meaning of the language used? You are to say as to what it means,— the ordinary signification among men. What does it mean to kindle or start a fire?" In regard to the first question the court said it was the only vital question in the case; "What was being used when the stacks of wheat were destroyed,— wood, coal, or both? That second question presents the subject more decidedly; and the next question throws some light on the dispute." The court later said, ".The meaning of the first question is, What was in the fire-box at the time the fire occurred?" and, generally, said that the three questions were practically the same: "Were they using wood to kindle or start up the fire, or to produce

Thurston vs. The Burnett & Beaver Dam Farmers' Mutual Fire Ins. Co.

power?" 'That the jury should first determine in their minds, as if there was no special verdict, whether the machine, under the evidence, was being run in accordance with that provision of the policy or in violation of it.' And further said, "When you get the question settled, reduce your answers to writing, to the questions, so they will conform to the real spirit of the contract."

All the questions, and those upon which the right to recover depended, were answered in favor of the plaintiff. Numerous exceptions were filed to the charge, and there was a motion to set aside the verdict as contrary to the evidence and to grant a new trial, made, denied, and the ruling duly excepted to. Judgment was rendered in plaintiff's favor, from which this appeal was taken.

For the appellant there was a brief by *Sawyer & Sawyer* and *H. K. Butterfield*, and oral argument by *E. W. Sawyer*.

For the respondent there was a brief by *Malone & Bachhuber*, and oral argument by *J. E. Malone*.

MARSHALL, J. Fires caused by the use of steam engines on the premises insured by the defendant, other than threshing machine engines using coal as fuel, with sufficient wood to kindle or start the fire, were excepted out of and not covered by the contracts of insurance. Such excepted fires cannot be included by judicial construction or by the verdict of a jury, without reading into the contract language the parties clearly did not put there. Neither courts nor juries are permitted to do that. The meaning of the term "coal as fuel, with sufficient wood to kindle or start the fire," was the important question on the trial; such meaning appears to be plain and unambiguous; no extrinsic evidence was admissible to explain it, nor was any such evidence received or offered. The case comes clearly within the rule that where language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty

as to the meaning of the words used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court. *Ganson v. Madigan*, 15 Wis. 144; *Murphey v. Weil*, 92 Wis. 467. Therefore the trial court erred in leaving the construction of the contract to the jury.

As indicated, no difficulty is perceived in determining the meaning of the term in question, when it is kept in mind that, when plain language is used in such connection as to leave no room to say, reasonably, that the parties might have intended either of two meanings, the apparent import of the words as generally understood must govern. Story, Cont. § 780; *Mississippi River Logging Co. v. Wheelihan*, 94 Wis. 96. In such cases, the rule that all ambiguities, obscurities, and uncertainties in a policy of fire insurance are to be resolved most favorably to the assured, has no application whatever.

The words "coal for fuel, with sufficient wood to kindle or start the fire," meant that wood was permitted to be used only with coal and for the one purpose of igniting the coal by aid of the more combustible quality of the wood, and that when the coal was once sufficiently ignited the use of wood was no longer allowed. The clause did not permit the use of wood exclusively for a considerable period of time to produce power, or at all for that purpose, and if wood was nevertheless used to produce power, either alone or with coal, for two or three hours or for half an hour, and then only coal was fed into the fire box for fifteen or twenty minutes, the latter circumstance did not render the engine one using coal for fuel, with sufficient wood to kindle or start the fire, within the meaning of the policy. Such a construction would do violence to the language used by the

parties. It would not be construction at all, but the making of a contract not contemplated by the parties at the outset. If, after sufficient wood was used to kindle or start the fire, wood was used to operate the engine, in whole or in part, even though coal was the last fuel fed into the fire-box before the loss occurred, the engine was manifestly not one using coal for fuel, with sufficient wood to kindle or start the fire, but was an engine using wood and coal for fuel to produce power.

With the foregoing construction of the contract of insurance, we turn to the consideration of the exception to the ruling of the trial court, refusing to set aside the verdict and grant a new trial.

The evidence is practically undisputed that in the forenoon, and for a short time after the noon hour, the engine was operated by the use of wood exclusively as fuel. It was then moved to the place where the fire occurred, by the use of wood as fuel. During the day, up to the time of the fire, the engine stack was guarded by a screen on account of the use of wood for fuel. The machine was started and run at the setting where the fire occurred, for half an hour, with wood for fuel, exclusively. A man was then sent for coal to the coal wagon, which had not been moved up from a previous setting. He brought one lump. Part of that was used before the fire occurred, which happened from fifteen to twenty minutes thereafter. The engineer testified that he sent for the coal because he thought it would be a helper; that he could keep up steam with wood, but thought that it was nice to have a little coal as there was plenty of it; that there was always some wood in the fireplace. There was much other evidence, but none to materially vary the foregoing. True, the engineer said that when he got the fire fit to burn coal he burned coal exclusively, but it is undisputed that he kept up steam with wood thirty minutes or thereabout, before any coal at all was used; in fact, that he had

been using wood exclusively during the whole day, up to the time that the one lump was brought to him about fifteen minutes before the fire occurred; that the coal wagon was left back at another setting; that the only fuel at the scene of operations for use, except that carried on the engine, none of which was used, was a pile of wood; and that there was some wood in the fire box all the time down to the instant the fire occurred.

In the light of the foregoing and the correct construction of the contract of insurance, argument is unnecessary to show that the finding of the jury that no more wood was used with the coal than was sufficient to kindle or start the fire was contrary to the undisputed evidence. The fire was started in the engine before it was moved to the setting; power was produced by the use of wood exclusively, in moving the engine and in operating it till a few moments before the fire occurred, and coal was then used, broken off of the one lump, as a helper. Plaintiff failed to establish any liability on the policies. When the evidence was closed there was no question, really, for submission to the jury. The inferences from the evidence, that more wood was used than was necessary to kindle or start the fire, were all one way.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded for a new trial.