KRAEMER BROS., INC., Plaintiff-Appellant, v. UNITED STATES FIRE INSURANCE COMPANY, Defendant-Respondent and Third-Party Plaintiff: PREPAKT CONCRETE COMPANY, and another, Third-Party Defendants.

Supreme Court

*No. 76–096. Submitted on briefs November 1, 1978.—Decided May 30, 1979.*

(Also reported in 278 N.W.2d 857.)

556

558

For the appellant the cause was submitted on the brief of *Michael G. Laskis* and *Melli, Shiels, Walker & Pease, S.C.,* of Madison.

For the respondent the cause was submitted on the brief of *Kenneth M. Kenney* and *Kenney, Krembs, Fellows & Wolfe* of Milwaukee.

SHIRLEY S. ABRAHAMSON, J.   This is an appeal from a summary judgment denying recovery to the insured on a contractor's multiple peril form insurance policy.   We reverse the judgment.

Kraemer Bros., Inc., plaintiff-insured, sued United States Fire Insurance Company, defendant insurance company, on an insurance policy for loss and damages in the sum of $112,000 caused by the collapse of a retaining wall erected by Prepakt Concrete Company, Kraemer's subcontractor.   Kraemer alleged in its complaint that on or about June 12, 1972 it entered into a contract with the State of Wisconsin to construct a living complex at the Wisconsin School for the Deaf and that the U. S. Fire Insurance Company had issued to Kraemer its form policy entitled "contractor's multiple peril form," which the parties refer to as an "all-risk" policy.   The policy covered "materials, supplies, machinery, equipment, fixtures and temporary structures to be used in or incidental to the construction, fabrication, installation, erection or completion of uncombustible, 4 story, living complex for Wisconsin School of the Deaf and remodeling of power plant."

The policy is attached to the complaint as an exhibit and includes the following provisions.

Paragraph 8 of the policy sets forth the perils insured against:

"8. Perils Insured Against. This policy insures against all risks of direct physical loss or damage to the property insured from any external cause except as hereinafter provided."

Paragraph 9 of the policy lists perils which are excluded from coverage:

"9. Perils Excluded. This policy does not insure against:

". . .

"(c) loss or damage caused by faulty materials, improper workmanship or installation, errors in design or specifications. . . ."

The complaint further alleges that the collapse of the retaining wall occurred while the policy was in full force, that the collapse damaged, destroyed and injured insured property in the amount of $112,000 (including costs of removal of debris and repairing and replacing damaged, destroyed and injured property) and that the damage was not caused by Kraemer's use of faulty materials, improper workmanship or installation, nor by any error in design or specifications attributable to Kraemer. The complaint did not describe the cause of the collapse.

U. S. Fire answered the complaint denying liability and asserting as an affirmative defense that, on information and belief, the collapse of the retaining wall was caused by faulty materials, improper workmanship and errors in design on the part of Prepakt.

Kraemer demurred to the affirmative defense on the ground that it did not state facts sufficient to constitute a defense. The trial court overruled the demurrer.

U. S. Fire then moved for summary judgment. This motion was opposed by Kraemer. The trial court granted summary judgment to U. S. Fire and dismissed the complaint. It is this judgment from which Kraemer appeals.

We first consider whether the trial court properly overruled Kraemer's demurrer to the affirmative defense.[1] U. S. Fire's defense to the action is that the collapse was caused by faulty materials, improper workmanship and errors in design on the part of Prepakt and that under the terms of the policy U. S. Fire is not liable for the loss. As stated above, paragraph 9(c) of the policy excluded "loss or damage caused by faulty materials, improper workmanship or installation, errors in design or specifications . . . ." Kraemer maintains that U. S. Fire does not state a defense as a matter of law because the policy exclusion refers only to the acts of the insured (*i.e.*, Kraemer) and not to acts of strangers to the insurance contract (*i.e.*, Prepakt). Thus the decision of the demurrer turns on the proper construction of the policy.

The construction of an insurance policy is generally a matter of law for the court, although in a case of ambiguity where words or terms are to be construed by extrinsic evidence, the question is one for the fact-finder. The rule stated in *Thurston v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.*, 98 Wis. 476, 478, 479, 74 N.W. 131 (1898), was recently quoted with approval in *RTE Corp. v. Maryland Casualty Co.*, 74 Wis.2d 614, 621, 247 N.W.2d 171 (1976):

" '. . . The case comes clearly within the rule that where language is plain and unambiguous, the apparent

---

[1] The court may review the order overruling Kraemer's demurrer because that order involves the merits of the case and affects the judgment subsequently entered. Sec. 817.34, Stats. 1975, provides:

"Upon an appeal from a judgment, and upon a writ of error, the supreme court may review any intermediate order which involves the merits and necessarily affects the judgment, appearing upon the record."

import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court.' "

*See also Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 379, 254 N.W.2d 463 (1977).

In the case at bar no extrinsic evidence was offered or introduced bearing upon the meaning of the terms of the policy. The meaning of the policy was therefore a question of law to be determined by the trial court upon a consideration of the contract as a whole, and because it is a question of law, it may be redetermined independently by this court on appeal. *Zweck v. D P Way Corp.,* 70 Wis.2d 426, 435, 436, 234 N.W.2d 921 (1975).

The rules governing construction and interpretation of insurance policies are those applicable to contracts generally. The objective in interpreting and construing a contract is to ascertain the true intention of the parties. *Home Mut. Ins. Co. v. Insurance Co. of N. A.,* 20 Wis.2d 48, 51, 121 N.W.2d 275 (1963); *French v. Fidelity & Casualty Co. of N. Y.,* 135 Wis. 259, 265, 115 N.W. 869 (1908). The policy is to be considered as a whole in order to give each of its provisions the meaning intended by the parties. *Laabs v. Chicago Title Ins. Co.,* 72 Wis. 2d 503, 511, 241 N.W.2d 434 (1976); *D'Angelo v. Cornell Paperboard Products Co.,* 59 Wis.2d 46, 50, 207 N.W.2d 846 (1973).

Paragraphs 8 and 9 of the insurance policy contain the relevant provisions regarding perils covered by the policy and perils excluded by the policy. Paragraph 8, quoted above, provides that a risk of direct physical loss

or damage is covered by the policy if (a) the loss or damage to the property insured has an "external cause" and (b) the risk is not excluded by other provisions in the policy, primarily those in paragraph 9, entitled "Perils Excluded."

The requirement that the loss or damage arise from a cause external to the insured property is a provision typically found in an all-risk policy. Courts have construed this language as applying only to losses caused by an outside force or agency, fortuitous and extraneous to the insured property and have excluded from coverage losses arising from inherent qualities or defects of the insured property.[2]

The all-risk policy was described in 5 Appleman, *Insurance Law & Practice*, sec. 3092, p. 371 (1970) as follows:

"In its original development, an all-risk policy was not in actuality that but merely a combination of several coverages and anything which was not expressly included was excluded. The title was, of course, misleading. Recently, however, courts have been indicating that such policies are considered to cover all fortuitous and extraneous losses, which are not specifically excluded from coverage. Nevertheless, such a policy is not a promise to pay for loss or damage which is almost certain to happen because of the nature and inherent qualities of the insured property."

In *Glassner v. Detroit Fire & Marine Ins. Co.*, 23 Wis. 2d 532, 536, 127 N.W.2d 761 (1964), this court described such a policy as follows:

[2] *Glassner v. Detroit Fire & Marine Ins. Co.*, 23 Wis.2d 532, 536, 127 N.W.2d 761 (1964); *Avis v. The Hartford Ins. Co.*, 283 N.C. 142, 195 S.E.2d 545 (1973); *Aetna Casualty & Surety Co. v. Yates*, 344 F.2d 939 (5th Cir. 1965); *C H Leavell & Co. v. Fireman's Fund Ins. Co.*, 372 F.2d 784 (9th Cir. 1967); *Assoc. Engineers, Inc. v. Am. Nat. Fire Ins. Co.*, 175 F. Supp. 352 (N.D. Calif. 1959); *Chute v. North River Ins. Co.*, 172 Minn. 13, 214 N.W. 473, 474 (1927); *Bankers Fire & Marine Ins. Co. v. Contractors Equip. Rental Co.*, 276 Ala. 80, 159 S.2d 198 (1963).

"An 'all risk' policy is a promise to pay for loss caused by a fortuitous and extraneous happening, but it is not a promise to pay for loss or damage which is almost certain to happen because of the nature and inherent qualities of the property insured.[1]"

"[1] 2 Richards, Insurance (5th ed. 1952), pp. 721, 722, sec. 212; Anno. Coverage under 'all risks' insurance, 88 A.L.R.(2d) 1122, 1125–1127, secs. 2, 3(a), and 4; Gorman, All Risks of Loss v. All Loss: An Examination of Broad Form Insurance Coverages, 34 Notre Dame Lawyer (1959), 346, 348; Gorman, *supra*, part III, pp. 351–354; Landis, All Risks Insurance, 1951 Insurance Law Journal, 709–716; *Finkelstein v. Central Mut. Ins. Co.* (1957), 8 Misc.(2d) 261, 166 N.Y. Supp.(2d) 989; *Gillespie & Co. v. Continental Ins. Co.* (1958), 14 Misc.(2d) 110, 176 N.Y. Supp.(2d) 146."

Arguably a defect in the design and construction of insured property is inherent in that property, rather than an "external cause," and therefore this kind of defect is not a peril included by paragraph 8 of the policy, even in the absence of a specific exclusion clause expressly applicable to such defects. *See Aetna Casualty and Surety Ins. Co. v. Yates,* 344 F.2d 939, 941 (5th Cir. 1965). *But see Essex House v. St. Paul Fire and Marine Insurance Co.,* 404 F. Supp. 978, 987, 992 (S.D. Ohio 1975). We do not rest our decision upon this reasoning, however. We conclude that this peril is excluded by paragraph 9(c) of the policy.

The exclusion relied upon by U. S. Fire, paragraph 9 (c) quoted above, provides that the policy does not insure against loss or damage caused by faulty materials, improper workmanship or installation and errors in design or specifications. There is no modifying or qualifying clause in paragraph 9(c) specifying the source of the faulty design, materials, or improper workmanship. Compare paragraph 9(d) of the policy which excludes a loss occurring because of a "dishonest act committed . . . by any Assured . . . ." If it was intended that paragraph 9(c) exclude only the acts of the Assured, *i.e.*

Kraemer, the policy could have so stated, in a manner similar to paragraph 9(d).

■

We conclude that a loss caused by the collapse of a retaining wall because of faulty materials, improper workmanship or installation or errors in design or specifications attributable to a subcontractor is a peril excluded by the policy. Accordingly we hold the U. S. Fire's answer states a good defense. The trial court properly overruled Kraemer's demurrer.

We consider next whether the trial court erred in granting summary judgment to U. S. Fire.

Sec. 802.08(2), Stats., provides that summary judgment shall be rendered when no material facts are in dispute and only a question of law is presented.

"802.08  **Summary judgment.** . . .

"(2)  MOTION.  The motion shall be served at least 20 days before the time fixed for the hearing.  The adverse party prior to the day of hearing may serve opposing affidavits.  The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

This court has recognized that perhaps no section of the statutes has been the subject of so much litigation as the summary judgment provision. *Leszczynski v. Surges,* 30 Wis.2d 534, 537, 141 N.W.2d 261 (1966).

■

On summary judgment the burden is on the moving party to establish the absence of a genuine, that is, disputed, issue as to any material fact. On summary judgment the court does not decide a genuine issue of ma-

terial fact; it decides whether there is an issue of fact in dispute. A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy. Some courts have said that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir. 1978). All doubts as to the existence of a genuine issue of material fact must be resolved against the party moving for summary judgment. *Hopewell Township Citizens v. Volpe*, 482 F.2d 376, 380 (3d Cir. 1973) ; 10 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 2725, p. 510 (1973).

This court has explained its procedure in determining whether a summary judgment should be granted. The court first examines the moving papers and documents to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff.[3] If the defendant does not make out a

---

[3] Sec. 802.08(3), Stats. 1975 provides:

"(3) SUPPORTING PAPERS. Supporting and opposing affidavits shall be made on personal knowledge and shall set forth such evidentiary facts as would be admissible in evidence. Copies of all papers or parts thereof referred to in an affidavit shall be attached thereto and served therewith, if not already of record. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this section, an adverse party may not rest upon the mere allegations or denials of the pleadings but the adverse party's response, by affidavits or as otherwise provided in this section, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against such party."

*prima facie* case for summary judgment we need go no further. If the affidavit in support of the motion makes out a *prima facie* case for summary judgment we must then examine the affidavits in opposition to the motion. To defeat the motion the statute requires the opposing party to set forth facts showing that there is a genuine issue for trial. *Leszcynski v. Surges, supra,* 30 Wis.2d at 538–540, 141 N.W.2d 261 (1966) ; *Marshall v. Miles,* 54 Wis.2d 155, 194 N.W.2d 630 (1972).

The supporting affidavits and documents, if any, of the moving party are carefully scrutinized. The inferences to be drawn from the underlying facts contained in the moving party's material must be viewed in the light most favorable to the party opposing the motion. *Adickes v. Kress & Co.,* 398 U.S. 144, 157–158 (1970). If the movant's papers before the court fail to establish clearly that there is no genuine issue as to any material fact, the motion must be denied. 6 Moore on Federal Practice, 56.15[3], p. 56–463 *et seq.* (2d ed. 1976). If the material presented on the motion is subject to conflicting interpretations or reasonable men might differ as to its significance, it is improper to grant summary judgment. 10 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 2725, p. 515 (1973) ; *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962) ; *Mogle v. Sevier County School Dist.,* 540 F.2d 478, 482 (10th Cir. 1976).

Following the procedure set forth by this court, we look first at the affidavits filed by U. S. Fire in support of its motion for summary judgment.

Counsel for U. S. Fire filed two affidavits in support of its motion for summary judgment. Only one affidavit is relevant to the summary judgment and can be summarized as follows :[4]

---

[4] In his second affidavit, counsel for Kraemer refers to a report in his possession attributing the collapse of the wall to inadequate design (a copy of which report is not attached to the

(1) It states that Kraemer's action is to recover upon its policy with U. S. Fire.

(2) It states U. S. Fire's affirmative defense that paragraph 9(c) of the policy excludes from coverage "loss or damage caused by faulty materials, improper workmanship . . . errors of design" and that U. S. Fire "is informed and believes, and as the plaintiff has acknowledged in writing under oath, the collapse of the retaining wall . . . was caused by faulty materials, improper workmanship and errors in design on the part of Prepakt. . . ."

(3) It states that Kraemer's demurrer to the affirmative defense was overruled.

(4) It states that there is no issue between the parties and that "both assert that the alleged damages . . . were caused by faulty materials, improper installation or errors in design on the part of . . . Prepakt."

(5) It states that Kramer commenced a separate action in Sauk County circuit court against Prepakt and Andrews Company, Inc., which action was removed to federal court. The affidavit describes Kraemer's complaint in this separate action (in which U. S. Fire is not a party) as alleging that the collapse of the wall is caused by Prepakt's errors in design, use of faulty materials, and improper workmanship. A copy of the complaint is attached to the affidavit.

(6) It states that by stipulation Kraemer abandoned its claim in federal court against Andrews. A copy of the stipulation is appended to the affidavit.

(7) It states that Kraemer filed an amended complaint in the federal action, which apparently names

---

affidavit) and refers to letters between himself and counsel for Kraemer as to U. S. Fire's participation in Kraemer's federal suit against Prepakt (a copy of each letter is attached to the affidavit). This affidavit does not set forth evidentiary facts relevant to the motion for summary judgment. *See* note 3 *supra.*

Prepakt and not Andrews as a defendant and which alleges that the collapse is attributable to errors in design or specifications, faulty materials, and improper workmanship of Prepakt. A copy of the amended complaint is attached to the affidavit.

The affidavit by counsel for U. S. Fire does not aver specific evidentiary facts on personal knowledge. The affiant makes a conclusory averment that both parties agree that Prepakt's errors were the cause of the collapse. The affiant supports this conclusion by averments regarding the existence and contents of pleadings filed by Kraemer in proceedings in other actions and appended to the affidavit.[5] Evidently U. S. Fire is asking the court to interpret Kraemer's pleadings as an admission by Kraemer.

Admissions are the words of the party opponent offered as evidence against him. Admissions come in as substantive evidence of the facts admitted. McCormick, *Evidence,* sec. 262, pp. 628, 629 (2d ed. 1972) ; 40L Wis. Stats. Annot. sec. 908.01, Judicial Council Committee's Note—1974, pp. 436–438 (1975). A positive statement of an evidentiary fact made by a party in a pleading in another case may be sufficient to constitute an admission and to establish a fact as a verity, *i.e.* as undisputed, on a motion for summary judgment.[6]

---

[5] Counsel for U. S. Fire need not, and does not, aver on personal knowledge that the statements in those pleadings are true, but only that they were made in pleadings filed by Kraemer. *Clark v. London & Lancashire Indemnity Co.,* 21 Wis.2d 268, 272–276, 124 N.W.2d 29 (1963). *See* note 3 *supra.*

[6] *See also Rude v. Algiers,* 11 Wis.2d 471, 480, 481, 105 N.W.2d 825 (1960) ; McCormick, *Evidence,* sec. 265, p. 635 (2d ed. 1972) ; 4 Wigmore, *Evidence,* sec. 1066, 1067 (Chadbourne rev. 1972); Annot., *Admissibility of Pleading as Evidence Against Pleader on Behalf of Stranger to Proceedings in Which Pleading was Filed,* 63 A.L.R.2d 412 (1959) ; Note, *The Admission in Evidence of Pleadings Under the Codes and Under the Federal Rules of Civil Procedure,* 106 U. of Pa. L. Rev. 98, 100 (1957).

U. S. Fire wishes us to construe Kraemer's pleadings in the federal action to constitute an admission by Kraemer that Prepakt's errors were the sole cause of Kraemer's loss. Such an admission would eliminate any fact dispute as to the cause of the collapse. Because a loss attributed solely to such a cause is excluded from coverage under U. S. Fire's policy, as we discussed earlier in this opinion, U. S. Fire would then be entitled to a summary judgment. If it is proved that an excluded peril is not the sole cause of the collapse, U. S. Fire is liable under the policy. Where a policy expressly insures against loss caused by one risk but excludes loss caused by another risk, coverage is extended to a loss caused by the insured risk even though the excluded risk is a contributory cause. *Lawver v. Boling,* 71 Wis.2d 408, 422, 238 N.W.2d 514 (1976) ; *General American Trans. Corp. v. Sun Ins. Office, Ltd.,* 239 F. Supp. 844, 845, 846 (E.D. Tenn. 1965) ; *Essex House v. St. Paul Fire & Marine Ins. Co.,* 404 F. Supp. 978, 985 (S.D. Ohio 1975).

By asking for summary judgment U. S. Fire is contending that the construction of the pleadings is a matter of law which can be decided on summary judgment. *Walter Kassuba, Inc. v. Bauch,* 38 Wis.2d 648, 653, 158 N.W.2d 387 (1968). U. S. Fire is asserting that there is but one reasonable interpretation of the pleadings, namely that the pleadings on their face constitute an admission by Kraemer that the loss was caused solely by Prepakt's errors. We cannot agree with U. S. Fire. We believe that Kraemer's pleadings are ambiguous and bear more than one reasonable construction. The construction of the pleadings presents an issue of fact which cannot be decided on summary judgment.

The documents submitted by U. S. Fire do not establish a *prima facie* case that there is no dispute between the

parties as to whether Prepakt's errors were the sole cause of the collapse. First, several allegations in Kraemer's pleadings that Prepakt's errors contributed to the collapse of the wall are made on information and belief. These allegations are substantially equivalent to averments in a supporting affidavit that are made on information and belief. An affidavit made on information and belief does not satisfy the statutory requirement that the affidavit be made on personal knowledge and set forth evidentiary facts as would be admissible in evidence. Sec. 802.08(3), Stats. 1975. An affidavit made on information and belief would be insufficient to establish that Prepakt's errors caused Kraemer's loss and that U. S. Fire's affirmative defense "is sufficient to defeat the plaintiff." The substantially equivalent allegations in the pleadings therefore fail to establish U. S. Fire's *prima facie* case for summary judgment. *Leszczynski v. Surges, supra,* 30 Wis.2d at 538.

Second, Kraemer's amended complaint against Prepakt in the federal action must be construed as an alternative to its complaint in the instant case. Kraemer's complaints, viewed as the equivalent of a single pleading in the alternative, allege that *either* Prepakt's errors were the sole cause of the collapse, *or* that a risk covered by Kraemer's policy with U. S. Fire caused the loss. Such an allegation in the alternative does not constitute an admission of either alternative.

Third, Kraemer's original complaint (later amended) against Prepakt in the federal action does not place sole responsibility for the collapse of the wall on Prepakt. That complaint also states a cause of action against Andrews, namely that Andrews' negligent acts of digging a trench and piling dirt were a substantial cause of the collapse of the wall. Thus the original complaint does not substantiate U. S. Fire's assertion that Kraemer's plead-

ings admit that Prepakt's errors were the sole cause of the collapse. It appears that U. S. Fire was aware of this difficulty and attempted to overcome it by asserting in its affidavit that Kraemer stipulated to dismiss the complaint against Andrews. We have read the stipulation which U. S. Fire attached to its affidavit and conclude that it does not say what U. S. Fire asserts. The stipulation is between Prepakt and Andrews agreeing that Prepakt would dismiss a cross complaint against Andrews without prejudice. Kraemer is not a party to the stipulation.

For the above reasons we conclude that neither the affidavit of the counsel for U. S. Fire nor the appended pleadings filed by Kraemer in the federal lawsuit establish that there is no material fact in dispute. Indeed the documents show that there is a dispute between the parties as to whether Prepakt's errors were the sole cause of the collapse of the restraining wall.

We conclude that the affidavits and documents of U. S. Fire, the moving party, do not make a *prima facie* case for summary judgment. The judgment of the trial court is reversed, and the cause is remanded.

*By the Court.*—Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.