VOLUNTEERS OF AMERICA CARE FACILITIES, a Minnesota non-profit corporation registered to do business in Wisconsin, and Unicare Health Facilities, Inc., a Wisconsin corporation, Plaintiffs-Respondents,

v.

VILLAGE OF BROWN DEER, Wisconsin Board of Health, Safety and Welfare, Patrick Barrett, Mary Kust, John P. Wolfgram, Nancy Anderson, Richard O'Malley and Roe Parker, Defendants-Appellants.

Court of Appeals

No. 79–1123. Submitted on briefs April 9, 1980.—
Decided May 15, 1980.
(Also reported in 294 N.W.2d 44.)

For the appellant the cause was submitted on the brief of *Harold H. Fuhrman*, village attorney, with whom on the brief was *Mark W. Ninneman*, assistant village attorney, Village of Brown Deer.

For the respondents the cause was submitted on the brief of *Roch Carter, Michael J. Spector, Joseph D. Masterson*, and *Quarles & Brady* of counsel, all of Milwaukee.

Before Decker, C.J., Moser, P.J., and Cannon, J.

MOSER, P.J.   This is an appeal from a summary judgment, declaring the Village of Brown Deer ordinances secs. 9–5.01 *et seq.*, requiring annual registration of nursing homes, void and invalid as in conflict with the authority of the Department of Health and Social Services (DHSS) under ch. 50 of the Wisconsin Statutes. The trial court ruled that the ordinances were invalid as they affected the Hearthside Nursing Home and Rehabilitation Center (Hearthside), owned by Volunteers of

America Care Facilities, a Minnesota corporation, and operated by Unicare Health Facilities, Inc. The summary judgment also declared Brown Deer's ordinances, secs. 5–9.01 *et seq.*, requiring a food handling license as it affects nursing homes licensed by the state, void and invalid. The trial court determined that sec. 50.02, Stats., preempts local ordinances concerning the licensing of nursing homes, and precluded Brown Deer from enforcing the ordinances in question.

This action commencd with an *ex parte* temporary injunction on September 21, 1978, restraining the Village of Brown Deer from holding public hearings concerning the "registration" of Hearthside. The *ex parte* order was coupled with a motion for temporary injunction and a summons and complaint demanding a judgment declaring Brown Deer ordinance 9–5.01 *et seq.* invalid and void as contrary to ch. 50, Stats., and further demanding a permanent injunction against Brown Deer from holding the above-described hearing.

After a hearing held on October 3 and 25, 1978, the trial court granted a temporary injunction restraining Brown Deer from holding any hearing pertaining to the enforcement of the ordinances in question. The temporary i  ,ction was made permanent after a hearing on March 16, 1979. At that hearing the trial court allowed the complaint to be amended to further enjoin Brown Deer from holding a public hearing under its food handling ordinance 5–9.01 *et seq.* as it affects nursing homes. On April 24, 1979, the trial court made specific findings and executed an order which granted Hearthside summary judgment declaring Brown Deer's ordinances secs. 9–5.01 *et seq.* and secs. 5–9.01, *et seq.* invalid, void and of no effect as they applied to Hearthside. The judgment permanently enjoined Brown Deer from holding any hearing or taking any other action with respect to Hearthside pursuant to those ordinances. From this judgment Brown Deer appeals.

The dispositive issue on this appeal is whether ch. 50, especially sec. 50.02, Stats., preempts municipal ordinances which require "registration" of nursing homes and licensing of food handling in such nursing homes.

The law is well established that where a state act fully covers a subject or the state otherwise manifests a purpose to establish a uniform state rule pertaining to it, conflicting local ordinances on the same subject are invalid to the extent of the conflict.[1] The Wisconsin Statutes, ch. 50, establish authority within DHSS to regulate community-based residential facilities and nursing homes. Under sec. 50.02(1) of the Wisconsin Statutes, DHSS has the authority to provide uniform, statewide licensing inspection and regulation of community-based residential facilities and nursing homes.[2] As sec. 50.02(1) explicitly provides, local municipal orders concerning the authority to license, inspect, and regulate these facilities must not conflict with the statewide authority, except municipalities may set standards of building safety and hygiene.[3]

Brown Deer argues that its registration ordinance[4]

[1] 1A Sutherland, *Statutory Construction*, §30.01, p. 342 (Rev. 3d ed. 1972).

[2] *See* secs. 50.01(1), (1m), (3), Stats.

[3] Sec. 50.02(1), Stats., provides:
The department shall have authority to provide uniform, statewide licensing, inspection and regulation of community-based residential facilities and nursing homes as provided in this subchapter. Nothing in this subchapter may be construed to limit the authority of the department of industry, labor and human relations or of municipalities to set standards of building safety and hygiene, but any local orders of municipalities shall be consistent with uniform, statewide regulation of community-based residential facilities.

[4] *See* sec. 9–5.03 which provides:
*Section 9–5.03    Board Empowered to Regulate*
The Brown Deer Board of Health, Safety, and Welfare is empowered to register nursing homes and enforce the provisions of this ordinance. Nursing home registration shall be nontransferrable.

and its food handling license ordinances[5] were not inconsistent with the statewide authority of DHSS under ch. 50. We disagree.

What Brown Deer denominates as a "registration" ordinance is entitled "Board Empowered to Regulate."[6] The ordinance requires an annual fee of $150[7] and makes it unlawful for anyone to operate a nursing home without such registration.[8] It provides the municipal Board of Health, Safety, and Welfare with authority to maintain an injunction against a nursing home for failure to register.[9]

---

[5] *See* sec. 5–9.01 which provides:
No person, firm, or corporation shall keep, store, process, manufacture, offer for sale, sell or dispense food, milk, or milk products in any building, nor upon any premises in the Village of Brown Deer unless such person, firm, or corporation shall have first obtained a license to do so for each establishment at which food, milk or milk products is kept, stored, processed, manufactured, offered for sale, sold or dispensed.

[6] *See* sec. 9–5.03, *supra* note 4.

[7] Sec. 9–5.04 provides: "An annual registration fee of $150 is required."

[8] Sec. 9–5.05 provides:
It shall be unlawful for any person acting jointly or severally with any other person to conduct, maintain, operate or permit to be maintained or operated, or to participate in the conducting, maintenance or operating of a nursing home unless within sixty (60) days after the effective date hereof it is registered with the Brown Deer Board of Health, Safety, and Welfare, and unless it is licensed as a nursing home by the Wisconsin State Division of Health and Social Services.

[9] Sec. 9–5.06 provides:
Notwithstanding the existence or pursuit of any other remedy, the Board of Health, Safety and Welfare may, upon the advice of the Village Attorney, who shall represent the Board in all proceedings, maintain an action in the name of the Village for injunction or other process against any person or agency to restrain or prevent the establishment, conduct, management or operation of a nursing home without a license or without being registered or in violation of this ordinance or any applicable State Statute, Rule or Regulation.

By making it unlawful for anyone to operate a nursing home without prior "registration," Brown Deer purports to have the authority to regulate the details of nursing home operations. Indeed, the local ordinance, sec. 9–5.01, incorporates by reference the rules relative to nursing homes under the Wisconsin Administrative Code,[10] and, under sec. 9–5.02, Brown Deer adds additional requirements for nursing homes within the village. The food handling ordinance, likewise, requires Hearthside to obtain a license for food handling which can be revoked or suspended by the Village Board.[11]

---

[10] Sec. 9–5.01 provides:
The Village of Brown Deer hereby adopts by reference the rules relative to nursing homes promulgated by the State Board of Health as set forth in Chapter H 32 of the Wisconsin Administrative Code, as they presently exist and as they may from time to time be amended, repealed, recreated or modified.
All nursing homes constructed or operated in the Village of Brown Deer shall conform with the requirements set forth in the Rules of the State Board of Health, this ordinance and its amending publications, and other applicable Village ordinances or state regulations.

[11] See note 5, *supra*. See also sec. 5–9.08, which provides:
If upon inspection the Health Officer or authorized representative find that any licensed place is conducted or managed in violation of the ordinances or regulations of the Village of Brown Deer, or the laws of the State of Wisconsin, or the regulations of any agency of the State of Wisconsin prescribing standards of health or sanitation it shall be the duty of the Health Officer or authorized representative to serve an order upon the licensee, his agent or employee in charge of said licensed premises directing him within a certain reasonable time, not to exceed ten (10) days, to comply with said ordinance, statutes, or regulations. If the licensee shall fail to comply with said order within the time designated, the Health Officer or authorized representative shall serve said licensee, his agent or employee in charge of said licensed premises with a notice in writing that at a time not less than 48 hours from the time of serving of said notice his food license shall stand suspended until such time that inspection reveals that conformance to rules has been re-established. Continued violations of rules

Through implementation of the Brown Deer Board of Health's regulatory authority under the "registration" of nursing home ordinances and/or the food handling ordinances, Brown Deer could effectively close down a nursing home facility by the village without reference to DHSS' authority under sec. 50.02, Stats. This power vested in the Brown Deer Board of Health is in direct conflict with the comprehensive regulatory authority given DHSS to provide uniform statewide licensing, inspection and regulation of community-based nursing homes.

If the state has expressed through legislation public policy concerning a subject, a municipality cannot ordain an effect contrary to or in qualification of the public policy so established, unless there is a specific, positive, lawful grant of power by the state to the municipality to so ordain.[12] A municipality's ordinances may not infringe on the spirit of a state law or general policy of the state.[13] A municipality cannot lawfully forbid what the legislature has expressly licensed, authorized or required or authorize what legislation has forbidden.[14]

We hold that the Brown Deer ordinances secs. 9–5.01 *et seq.*, relating to the "registration" of community-based residential facilities and nursing home facilities, and secs. 5–9.01 *et seq.*, as they relate to community-based residential facilities and nursing homes, are inconsistent with the express statewide licensing procedure estab-

shall be grounds for permanent revocation of license by the Board of Health.

[12] 5 McQuillin, *Municipal Corporations*, §15.21, p. 88 (Rev. 3d. ed. 1969).

[13] *Wis. Env. Decade, Inc. v. D.N.R.*, 85 Wis.2d 518, 534, 271 N.W.2d 69, 76 (1978), *quoting Fox v. Racine*, 225 Wis. 542, 545, 275 N.W. 513, 514 (1937).

[14] *Id.* at 529, 271 N.W.2d at 74, *quoting Fox v. Racine, supra* note 13 at 545, 275 N.W. at 514.

lished in ch. 50, especially sec. 50.02(1), of the Wisconsin Statutes.[15]

On review of summary judgment we must examine pleadings, affidavits and other papers under the same standard as applied in the trial court.[16] A summary judgment should not be granted unless the moving party demonstrates a right to judgment with such clarity as to leave no room for controversy.[17] We have examined the pleadings, affidavits, and transcripts, and agree with the trial court that Hearthside has demonstrated a right to judgment with such clarity as to leave no room for controversy.

*By the Court.*—Judgment affirmed.

---

[15] *Cf. Janesville v. Walker,* 50 Wis.2d 35, 183 N.W.2d 158 (1971) (Janesville traffic ordinance invalid because area preempted by state).

[16] *Wright v. Hasley,* 86 Wis.2d 572, 579, 273 N.W.2d 319, 322–23 (1979); sec. 802.08, Stats.

[17] *Kraemer Bros. v. U.S. Fire Ins. Co.,* 89 Wis.2d 555, 566, 278 N.W.2d 857, 862 (1979).