LUNDSTEN, P.J.
¶1 Wisconsin has a long-standing rule that an attorney is not liable to a non-client for "acts committed in the exercise of his [or her] duties as an attorney." See Auric v. Continental Cas. Co. , 111 Wis. 2d 507, 512, 331 N.W.2d 325 (1983). There are exceptions to this rule and one of those exceptions, established in Auric , applies in the estate-planning context.
¶2 In this case, beneficiaries of a trust seek to hold an attorney liable for his alleged negligence related to the trust, despite the fact that the beneficiaries were never clients of the attorney. They rely on the Auric exception. The attorney, William Slate, moved for summary judgment dismissing the malpractice claim, arguing that the Auric exception does not apply. The circuit court agreed, and dismissed the suit with respect to Attorney Slate.
¶3 We agree with the circuit court that Attorney Slate was entitled to summary judgment. Accordingly, we affirm.
Background
¶4 In 1994, Attorney Slate drafted an irrevocable life insurance trust as a part of William Leek's estate planning. The purpose of the trust was to hold and maintain a previously purchased life insurance policy so that, upon Leek's death, an expected death benefit of $ 600,000 would be distributed to the beneficiaries named in the trust.
¶5 In 2002, Leek learned that the trustee for the trust might need to resign and that the person named as the successor trustee had died. Leek and Attorney Slate discussed the trustee situation. They discussed whether Joan Slate could act as the trustee. At the time, Joan Slate prepared Leek's income taxes. Joan Slate owned and operated "Slate Tax Service" in a building next to Attorney Slate's law office.
¶6 Leek picked Joan Slate to be the new trustee. Attorney Slate drafted the trust amendment naming Joan, and she took over trustee duties at the beginning of 2003. In her role as trustee, it was Joan Slate's responsibility to make sure that an annual life insurance policy premium was paid.
¶7 So far as the record discloses, Joan Slate performed her duties competently until 2014. That year, the policy-issuing insurance company sent Joan Slate two notices informing her that the policy would lapse if the premium was not paid. After the policy lapsed, the insurance company provided Joan with information explaining how the policy could be reinstated.
¶8 There are more details but, for purposes of this opinion, we will assume that Joan Slate negligently failed to pay the premium and negligently failed to take the steps necessary to have the policy reinstated. As a result, the life insurance policy was not in effect when Leek died the next year on August 30, 2015, and the beneficiaries did not receive the death benefit as Leek intended.
¶9 The beneficiaries sued Joan Slate for breach of fiduciary duty and negligence. They later amended their complaint to include a legal malpractice claim against Attorney Slate, the claim at issue in this appeal.
¶10 Attorney Slate moved for summary judgment, arguing that the malpractice claim must be dismissed because the beneficiaries were not Attorney Slate's clients. The circuit court granted Attorney Slate's motion, thereby dismissing the sole claim against him. The beneficiaries appeal that decision.[1]
Discussion
¶11 Generally, an attorney is not liable to third parties for negligent acts committed within the scope of the attorney-client relationship. Beauchamp v. Kemmeter , 2001 WI App 5, ¶7, 240 Wis. 2d 733, 625 N.W.2d 297 (2000). There are exceptions. A non-client may sue an attorney based on alleged fraud. Auric , 111 Wis. 2d at 512. A non-client may sue when an attorney knowingly "assists [a] client committing an unlawful act to the detriment of a third party." See Tensfeldt v. Haberman , 2009 WI 77, ¶¶59-68, 319 Wis. 2d 329, 768 N.W.2d 641. A third exception applies in the estate-planning context and has come to be known as the Auric exception. In broad strokes, the Auric exception permits a named beneficiary to sue an attorney for malpractice when the beneficiary can show that he or she was harmed by attorney negligence that thwarted the intent of the attorney's client. See Auric , 111 Wis. 2d at 512, 514 ; Beauchamp , 240 Wis. 2d 733, ¶9 (non-clients must be "named in an executed or unexecuted will or similar estate planning document").
¶12 The beneficiaries here argue that summary judgment was improperly granted because, under the Auric exception, they may maintain a legal malpractice action against Attorney Slate. We disagree.
¶13 Our analysis proceeds as follows. First, we briefly set forth the legal principles governing summary judgment. Second, we discuss the beneficiaries' factual assertions regarding what the record says about possible negligence on the part of Attorney Slate and explain that the assertions are not supported by the record. Third, we summarily reject as undeveloped an argument that Attorney Slate may be found liable to the beneficiaries for Joan Slate's negligence because Joan was acting as Attorney Slate's agent while Joan was acting as the trustee.
I. Summary Judgment Standards
¶14 We review summary judgment decisions de novo, applying the same methodology as the circuit court. Green Spring Farms v. Kersten , 136 Wis. 2d 304, 315-17, 401 N.W.2d 816 (1987). The burden is on the moving party to establish the absence of a genuine disputed issue as to any material fact. Kraemer Bros. v. United States Fire Ins. Co. , 89 Wis. 2d 555, 565, 278 N.W.2d 857 (1979). We must view the evidence, and inferences from the evidence, in the light most favorable to the non-moving party. Id. at 567.
II. The Beneficiaries' Factual Assertions
¶15 We agree with the statement in Attorney Slate's appellate brief that the beneficiaries "blur the distinction between the allegations in their complaint and their unsubstantiated conjecture on the one hand, with the undisputed material facts in the record on the other hand." As Attorney Slate goes on to state, our review "is limited to the facts in the record, not the case [the beneficiaries] wish[ ] they had."
¶16 We have identified 11 factual allegations that, so far as we can tell, form the factual basis for the beneficiaries' legal theory as to why they have a viable legal malpractice claim against Attorney Slate. According to the beneficiaries, Attorney Slate:
(1) recommended to Leek that Joan Slate be the new trustee;
(2) failed to disclose to Leek that Joan Slate had no trustee training;
(3) knew that Joan Slate did not have appropriate insurance;
(4) failed to warn Leek that Joan Slate lacked appropriate insurance;
(5) vouched for Joan Slate's fitness to be a trustee;
(6) failed to disclose Attorney Slate's conflict of interest;
(7) administered the trust;
(8) helped Joan Slate administer the trust by dealing with yearly notices to the beneficiaries;
(9) gave Joan Slate legal advice regarding the trust;
(10) communicated with Leek on Joan Slate's behalf regarding the trust; and
(11) failed to ensure that the life insurance policy premiums were paid.
As it turns out, we need not discuss the law relating to legal malpractice claims or the parameters of the Auric exception because all of the factual assertions above are either unsupported by the record or are irrelevant under any arguable view of the law. Obviously, assertions that are unsupported by the record or that establish irrelevant points provide no starting point for a material factual dispute. We address each assertion in turn.
1. Attorney Slate Recommended to Leek that Joan Slate Be the New Trustee
¶17 The beneficiaries assert that Attorney Slate recommended to Leek that Joan Slate be the new trustee. For example, they state: "Mr. Leek contracted for Joan's service, as explicitly recommended by William." The beneficiaries provide record cites for this assertion, but none of them provide support. And, our independent review of the record finds no support.
¶18 Rather, the only evidence in the record on this topic is Attorney Slate's deposition testimony that "Leek suggested" that Joan Slate be the new trustee "because [Joan] was doing his personal income tax and he had a business relationship with her." According to Attorney Slate, he told Leek: "I'll ask her but you have to ask her." In a follow-up letter to Leek, Attorney Slate wrote: "I suggest that if [the current trustee] is doing a good job for you each year and filling [sic] the necessary gift tax returns, that you have her continue."
¶19 In support of their assertion that Attorney Slate recommended Joan Slate, the beneficiaries point to a letter written by their expert malpractice witness. In that letter, the expert states: "Mr. Slate suggested that Joan Slate act as trustee ...." This reliance is disingenuous. The expert here does not purport to have personal knowledge about what Attorney Slate did at any point in time. As a result, the statement from the expert is not admissible in evidence and cannot be considered in our summary judgment analysis. See WIS. STAT. § 802.08(3) (2017-18) (affidavits must contain "evidentiary facts as would be admissible in evidence").
2. Attorney Slate Failed to Disclose to Leek that Joan Slate Had No Trustee Training
¶20 The beneficiaries assert that Attorney Slate did not disclose to Leek that Joan Slate had no "formal training" in how to act as a trustee. And, they assert, "Joan ... never had any formal training to be a trustee." These assertions are accurate so far as we can tell. But the beneficiaries do not explain why they are relevant.
¶21 The beneficiaries do not explain what it is that Joan Slate did not know with respect to her trustee duties or how any lack of training played a role in Joan Slate's failure to pay the insurance premium in 2014 after successfully paying the premiums for the previous 10 years. Accordingly, the beneficiaries have failed to explain why this allegation might demonstrate negligence on the part of Attorney Slate.
3. Attorney Slate Knew that Joan Slate Did Not Have Appropriate Insurance
¶22 The beneficiaries repeatedly assert, without citation to the record, that Attorney Slate knew that Joan Slate did not have the type of insurance that would protect the beneficiaries in the event of negligence on Joan's part. This lack of support is, by itself, a sufficient basis on which to reject the allegation. Attorney Slate points to an order resolving the coverage issue against Joan Slate, but that order does not address what Attorney Slate actually knew regarding pertinent insurance coverage. Our own review reveals deposition testimony by Attorney Slate indicating that he believed Joan Slate had insurance providing coverage for her work as a trustee.
4. Attorney Slate Failed to Warn Leek that Joan Slate Lacked Appropriate Insurance
¶23 The beneficiaries assert that Attorney Slate did not warn Leek that Joan Slate lacked appropriate trustee insurance. The beneficiaries do not point to an admission to this effect, but we conclude that it is a reasonable inference from the record. If Attorney Slate believed that Joan Slate did have the appropriate insurance, it follows that he would not have warned Leek that Joan lacked such insurance.
¶24 Because the beneficiaries assume, without demonstrating, that there is evidence that Attorney Slate knew Joan Slate did not have appropriate insurance, they fail to come to grips with why it is that an attorney in Slate's position-that is, an attorney who believes a potential trustee has the appropriate insurance-would be liable under any applicable malpractice law for failing to provide a warning. In particular, the beneficiaries do not point to any evidence or law indicating that attorneys have a duty to thoroughly check out another person or business that the attorney knows a client intends to employ. In the absence of developed argument, we discuss the matter no further.
5. Attorney Slate Vouched for Joan Slate's Fitness to Be a Trustee
¶25 The beneficiaries assert that Attorney Slate "guaranteed Joan was a trustworthy trustee." The beneficiaries fail to support this assertion. Their record citation is insufficient because it merely directs us to allegations in their complaint. Nonetheless, we have located support for the proposition that Attorney Slate vouched for Joan Slate as a trustee. In the letter Attorney Slate sent to Leek after their conversation about the need for a new trustee, Attorney Slate wrote:
Our tax office, Joan Slate, will be willing to act as trustee for you, however in order to make the annual insurance payment disbursement and do the required gift tax return, there is a charge of $ 125.00 total per year for that service. It is worth it because everything gets done exactly the way it should.
(Emphasis added.) However, assuming for purposes of this decision that in the italicized language above Attorney Slate vouched for Joan Slate's competence as a trustee, we fail to understand how this fact supports a legal malpractice claim.
¶26 The undisputed facts show that Joan Slate performed her limited trustee functions without a problem for over 10 years after becoming the trustee. The alleged negligence occurred in 2014. The beneficiaries point to no evidence supporting a finding that Joan Slate was not, at the time Attorney Slate vouched for her, competent to act as a trustee. Obviously, a failure to perform in a particular instance does not equal incompetence or an inability to perform generally.
¶27 In sum, the beneficiaries do not explain why Attorney Slate's vouching for Joan Slate in 2002 might by itself, or in combination with other allegations, support their malpractice claim.
6. Attorney Slate Failed to Disclose Attorney Slate's Conflict of Interest
¶28 The beneficiaries assert that Attorney Slate failed to disclose to Leek that Attorney Slate had a conflict of interest with respect to Joan Slate. This allegation is problematic in multiple ways.
¶29 First, the beneficiaries do not point to record support for the factual assertion that Attorney Slate did not advise Leek of Attorney Slate's relationship with Joan Slate. Rather, the beneficiaries point to the letter written by their expert malpractice witness which, as we explained in paragraph 19 above, is not a proper source of factual allegations regarding Attorney Slate's actions.
¶30 Second, all of the circumstantial evidence suggests that Leek would have known that Attorney Slate and Joan Slate had a familial relationship. Leek had employed both people for a significant period of time. Their offices are next door to each other. They share a post office box. They share a last name. And, of course, Leek did not initially ask Joan Slate directly to be a trustee, but instead asked Attorney Slate to ask Joan Slate. In contrast, the beneficiaries point to no evidence suggesting that Leek might have been unaware that Attorney Slate and Joan Slate were family members.
¶31 Third, we agree with Attorney Slate that the beneficiaries fail to explain why the Slates' spousal relationship creates a meaningful conflict of interest for purposes of this case.
¶32 Finally, the beneficiaries provide no reason to suppose that, if Attorney Slate had raised this topic with Leek, Leek would have made a different trustee decision.
7. Attorney Slate Administered the Trust
¶33 The beneficiaries effectively assert that Attorney Slate administered the trust. They make the legal argument that attorneys can be held "liable to third parties for negligently executing estate administration." They repeatedly speak in terms of Attorney Slate "managing" the trust.
¶34 In the subsequent subsections, we address specific allegations regarding assistance Attorney Slate allegedly provided to Joan Slate and Leek with respect to the trust. Here, it is sufficient to say that the beneficiaries point to no evidence that Attorney Slate agreed to or had a duty to administer the trust, or that he was the de facto trust administrator.
8. Attorney Slate Helped Joan Slate Administer the Trust By Dealing with Yearly Notices to the Beneficiaries
¶35 The allegation we address in this subsection involves what the parties refer to as "Crummey notices" or "Crummey withdrawal rights." Neither party explains Joan Slate's responsibility in this respect or the nature of the notices or rights. However, we find this explanation in Hatleberg v. Norwest Bank Wisconsin , 2005 WI 109, 283 Wis. 2d 234, 700 N.W.2d 15 :
The parties agree that the trust was defective because it did not contain "Crummey provisions." These provisions take their name from the Ninth Circuit's decision in Crummey v. Commissioner of Internal Revenue , 397 F.2d 82 (9th Cir. 1968). Crummey provisions give the trust beneficiaries present interest gifts, thereby qualifying the gifts for the annual gift tax exclusion. In effect, the provisions require the trustee to notify the trust beneficiaries that they have a right of withdrawal of the gifted funds. If the beneficiaries are not given a withdrawal right, the trust deposits do not qualify for the annual gift tax exclusion.
Id. , ¶7 (footnote and some citations omitted). We glean from this explanation and from brief testimony of Attorney Slate that Leek made yearly contributions to the trust to cover the life insurance policy premiums and that Joan Slate, as trustee, was required to send out yearly Crummey notices to the beneficiaries, notifying them that they could opt to take "cash" or sign a Crummey waiver which would permit Joan to use Leek's contribution to pay the policy premium. If Joan Slate's actual obligation varies in some respect, we discern no reason why that different obligation might affect our analysis.
¶36 The beneficiaries assert that Attorney Slate "helped Joan [Slate] manage the trust by ... dealing with Crummey notices." They assert that Attorney Slate "would ... communicate with beneficiaries [who] refused to sign Crummey letters." These assertions overstate what the record says with respect to Attorney Slate's involvement.
¶37 None of the record cites that the beneficiaries provide indicate that Attorney Slate communicated with beneficiaries. Rather, the evidence shows that on occasion Joan Slate advised Attorney Slate that a beneficiary was refusing to "sign to use the money to pay the premiums," an apparent reference to Crummey letters. In response, Attorney Slate would call Leek and advise him to talk to the beneficiary to " 'get it straightened out.' " We acknowledge that in Joan Slate's deposition testimony she agrees with the characterization of this assistance as "legal advice." However, she neither asserts that Attorney Slate directed her to do anything nor describes any "advice" whatsoever.
¶38 In sum, so far as we can tell, the record simply shows that Joan Slate communicated with Leek through Attorney Slate. We fail to understand how this limited involvement permits a reasonable inference that Attorney Slate had any meaningful involvement in administering or managing the trust. Moreover, there is nothing about this action by Attorney Slate that was negligent. There is no suggestion that a problem arose as a result of the Crummey notice activity.
9. Attorney Slate Gave Joan Slate Legal Advice Regarding the Trust
¶39 The beneficiaries assert that Attorney Slate "helped Joan [Slate] manage the trust by ... giving [Joan] legal advice about the [trust]" and that Attorney Slate would "[o]ccasionally ... give Joan legal advice about the [trust]." To the extent the beneficiaries are referring to legal advice regarding the Crummey topic, we have explained that the record reveals no legal advice. To the extent the beneficiaries mean to refer to any other legal advice, they do not describe what that advice might be and we have discovered no such advice.
10. Attorney Slate Communicated with Leek on Joan Slate's Behalf Regarding the Trust
¶40 The beneficiaries assert that Attorney Slate "helped Joan [Slate] manage the trust by ... communicating with Mr. Leek on her behalf." The beneficiaries do not describe the alleged communication, but the record cites provided suggest that they are referring to the Crummey topic. If that is all the beneficiaries are asserting, we have disposed of the allegation. If the beneficiaries mean to assert there was other communication, they do not specify what it is, and we address the topic no further.
11. Attorney Slate Failed to Ensure that the Life Insurance Policy Premiums Were Paid
¶41 The beneficiaries assert that Attorney Slate failed "to ensure the life insurance premiums were paid." So far as we can tell, this assertion is true. But the beneficiaries do not point to any evidence supporting a finding or legal conclusion that Attorney Slate had an obligation to ensure that the premiums were paid. The only evidence we have located in the record indicates that it was solely Joan Slate's responsibility to make sure that an annual life insurance premium was paid.
¶42 The beneficiaries also assert that Attorney Slate "investigated why the policy had lapsed, but he did not work with Joan to discover how the policy lapsed, [and] he never communicated with [the insurance company] about why the policy lapsed, nor did he try to reinstate the policy." The suggestion seems to be that Attorney Slate learned of the premium payment problem at a time when the policy could have been reinstated and that Attorney Slate failed to act. Apart from whether such knowledge and inaction would support a malpractice claim against Attorney Slate, the beneficiaries ignore the fact that Attorney Slate's "investigation" testimony includes his uncontradicted assertion that he learned about the problem only after Leek died. Indeed, in the "Statement of Agreed Facts," the beneficiaries concede that "Joan [Slate] did not tell [Attorney Slate] that the policy had lapsed" and that Attorney Slate "only learned that the policy had lapsed when, after Mr. Leek's death, he contacted the insurer about collecting the policy death benefits for the trust." The beneficiaries point to no evidence suggesting that, after he learned that the policy had lapsed, Attorney Slate could have done anything to have the policy reinstated.
¶43 In sum, regardless of whether the law might permit the beneficiaries to maintain a malpractice action against Attorney Slate if the allegations of negligence against Slate were supported by the record, the necessary facts that the beneficiaries rely on are either unsupported by the record or are irrelevant. Accordingly, we affirm the dismissal of the malpractice claim against Attorney Slate.
III. The Beneficiaries' Agency Argument
¶44 The beneficiaries argue that Attorney Slate may be found liable to the beneficiaries for Joan Slate's negligence because Joan was acting as Attorney Slate's agent while Joan was acting as the trustee. This argument falls short for several reasons, but it is sufficient to note just two.
¶45 First, the factual basis for the argument relies on factual assertions without supporting record cites regarding Attorney Slate's role after Joan Slate became the trustee. For example, the beneficiaries assert that, after Joan Slate became trustee, Attorney Slate "continued managing the trust." However, as we have seen, although there is evidence that Attorney Slate forwarded information from Joan Slate to Leek, there is no evidence that Attorney Slate "managed" the trust.
¶46 Second, even assuming the existence of an agency relationship between Attorney Slate and Joan Slate with respect to the trust, the beneficiaries do not provide a developed legal argument as to why Joan Slate's negligence should be attributed to Attorney Slate for purposes of expanding the exception to the general immunity rule prohibiting legal malpractice claims against attorneys by non-clients.
¶47 Accordingly, we summarily reject the beneficiaries' argument that Attorney Slate should be held liable to the beneficiaries because Joan Slate was acting as Attorney Slate's agent.
Conclusion
¶48 For the foregoing reasons, we affirm the circuit court's order dismissing the claim against Attorney Slate.
By the Court. -Order affirmed.
Not recommended for publication in the official reports.

The parties discuss the content of some documents that may or may not have been before the circuit court prior to the time the court orally decided the summary judgment motion. For example, there is some discussion of deposition testimony by Joan Slate that only appears in a full copy of her deposition filed after the hearing on Attorney Slate's summary judgment motion. However, we do not concern ourselves with whether this document or any other that the parties refer to is properly before us for purposes of our summary judgment analysis because any discrepancy in that regard does not harm the beneficiaries. As our discussion makes clear, the beneficiaries lose on appeal because their factual assertions are unsupported by the record or are irrelevant, not because of any particular evidence found anywhere in the record that helps Attorney Slate.