GLASSNER and wife, Appellants, v. DETROIT FIRE & MARINE INSURANCE COMPANY, Respondent.

*March 30—April 28, 1964.*

For the appellants there was a brief by *Arnold, Murray & O'Neill,* attorneys, and *Glassner, Clancy & Glassner* of counsel, and oral argument by *Robert N. Gordon,* all of Milwaukee.

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell,* and oral argument by *Clayton R. Hahn,* all of Milwaukee.

FAIRCHILD, J. 1. *Liability for the loss.* Plaintiffs appear to have been uncertain whether the damaged pump was an item of contents or a part of the dwelling building. The coverage provisions applicable to contents are different from those applicable to the building. If the pump were an item of contents, plaintiff needed to establish that the loss was caused by one of several listed perils, one of which was fire. They attempted to prove loss by fire by the charring which indicated short circuiting, and relied on the policy definition of loss by fire so as to include sudden and accidental injury

to electrical appliances resulting from electrical currents arti-ficially generated. If, on the other hand, the pump were part of the dwelling, it was insured against all risks of physical loss, except those excluded by the terms of the policy. De-fendant did not plead that the cause of the loss fell within any exclusion.

Upon the trial plaintiffs seem to have preferred the theory that the pump was an item of contents and damaged by fire. They did, however, make known their alternative theory. On appeal they accept the finding of the circuit court that the pump was part of the building, and rely upon the alterna-tive theory. They contend that it was unnecessary to prove that the pump (as part of the building) was damaged by fire, that they were required only to establish that the loss was occasioned by accident, and that defendant had the burden of pleading and proving any exclusion.

Defendant contends that even though the pump is part of the building, plaintiffs pleaded and tried their case on the theory of a fire loss and cannot seek relief on a different theory on appeal. This argument, we conclude, must fail. The language of the complaint, though referring at times to loss by fire, was broad enough to state a cause of action for fortuitous loss of a portion of the dwelling as well as for loss by fire of an item of contents, and the record shows that plaintiffs' counsel brought the alternative theory to the attention of the court and defendant's counsel at the trial.

The evidence as to the cause of the failure of the pump and motor is inconclusive. It suggests, at least, that water may have leaked into the electric motor which was in a capsule underneath the pump (and also submerged) and this may have caused the electrical short circuits and damage to pump, motor, and controls. It may be that the leakage resulted from normal deterioration or wear of parts of the mechanism. From the evidence alone, one might conclude that plaintiffs failed to prove that the damage was fortuitous,

as contrasted with an ordinary and almost certain conse-
quence of the inherent qualities and intended use of the equip-
ment.

Defendant, however, is in the position of having stipu-
lated that the pump was damaged "by accident and mis-
fortune, and without fault or negligence on the part of
plaintiffs" and of having failed to plead or prove that the cause
of the loss was excluded from coverage.

An "all risk" policy is a promise to pay for loss caused
by a fortuitous and extraneous happening, but it is not a
promise to pay for loss or damage which is almost certain
to happen because of the nature and inherent qualities of
the property insured.[1]

The insured under an "all risk" policy has the burden of
proving the loss, at least, and, in addition, according to some
authorities, that the loss was fortuitous. Once these are
established, the burden is upon the insurer to prove that the
loss arose from a cause which is excepted.[2]

We consider that plaintiffs had the burden of establishing
not only that damage occurred, but that it was fortuitous,
*i.e.,* that it resulted from a "risk," as contrasted with being
an ordinary and almost certain consequence of the inherent
qualities and intended use of the property. With these facts

---

[1] 2 Richards, Insurance (5th ed. 1952), pp. 721, 722, sec. 212;
Anno. Coverage under "all risks" insurance, 88 A. L. R. (2d) 1122,
1125–1127, secs. 2, 3 (a), and 4; Gorman, All Risks of Loss v. All
Loss: An Examination of Broad Form Insurance Coverages, 34
Notre Dame Lawyer (1959), 346, 348; Gorman, *supra,* part III, pp.
351–354; Landis, All Risks Insurance, 1951 Insurance Law Journal,
709–716; *Finkelstein v. Central Mut. Ins. Co.* (1957), 8 Misc. (2d)
261, 166 N. Y. Supp. (2d) 989; *Gillespie & Co. v. Continental Ins.
Co.* (1958), 14 Misc. (2d) 110, 176 N. Y. Supp. (2d) 146.

[2] Anno. Coverage under "all risks" insurance, 88 A. L. R. (2d)
1122, 1129–1131, sec. 6; Gorman, *supra,* part IV, pp. 355, 356, foot-
note 1; *Betty v. Liverpool & London & Globe Ins. Co.* (4th Cir.
1962), 310 Fed. (2d) 308; *Fireman's Fund Ins. Co. v. Hanley*
(6th Cir. 1958), 252 Fed. (2d) 780.

established, plaintiffs would be entitled to recovery unless the defendant pleads and proves that the particular risk from which the loss arose was excluded from coverage by the terms of the policy.

The policy before us does exclude from coverage losses arising from various risks, *e.g.*, loss by earthquake. It also expressly excludes losses from cause which might be considered not to be "risks" at all, but almost certain consequences, *e.g.*, loss by wear and tear, deterioration, mechanical breakdown. Here it might be argued whether the burden is on the insured to prove that the loss did not result from wear and tear, deterioration, and mechanical breakdown because he has the burden of proving that he has suffered a fortuitous loss, or whether the burden is on the insurer to prove that the loss did so result because it has treated these causes in its policies as if they were excluded risks.

We find it unnecessary, in this case, to decide that question because of the stipulation of the parties that the loss was the result of accident and misfortune.

*2. Amount of recovery.* Because the circuit court concluded plaintiffs could not recover, no finding was made as to the amount of the loss. We consider that plaintiffs clearly proved the following items: $96, cost of pump of same capacity and age; $65, cost of removing pump; $43.25, cost of new cable; $4.35, cost of starting capacitor; and $7.50, starting relay. Plaintiffs also paid $145 for labor installing the new unit, but at least $27.50 of this amount was made necessary by the fact that a pump of larger capacity was installed. The sum of the items sufficiently established is $216.10. The net installation labor charge, after deducting $27.50, was $117.50, but it was not made clear that the entire $117.50 was necessary to install a pump of the same type and capacity as that which had been damaged. We will grant plaintiffs the option within ten days after the return of the

record to the circuit court to file a written election to take judgment for $216.10 plus costs. If plaintiffs do not do so, defendant may, within twenty days after such return, file a written consent to judgment against it for $333.60 plus costs. If no option is exercised it will be necessary to have a further hearing to determine what part of the $117.50 amount is due plaintiffs.

*By the Court.*—Judgment reversed, cause remanded for further proceedings consistent with the opinion on file.