Charles F. KOZLIK, Estate of Jacquelyn Kozlik and Jaden Kozlik, Plaintiffs,

ESTATE OF Phillip R. LEVERANCE, by his personal representative, Diane L. Weis, Involuntary-Plaintiffs-Respondents,

v.

GULF INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 03–0175. Submitted on briefs September 25, 2003.—Decided November 19, 2003.*

2003 WI App 251

(Also reported in 673 N.W.2d 343.)

492

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Nathan J. Bayer* and *Timothy F. Mentkowski* of *Crivello, Carlson & Mentkowski, S.C.* of Milwaukee.

On behalf of the involuntary plaintiff-respondent, the cause was submitted on the brief of *James J. Gende II* and *Charles David Schmidt* of *Cannon & Dunphy, S.C.* of Brookfield.

Before Brown, Nettesheim and Snyder, JJ.

¶ 1. BROWN, J.   Phillip R. Leverance was a repeat client of Enterprise Rent-a-Car who always signed up for personal accident insurance (PAI), which included benefits for accidental death. This insurance was actually handled by Gulf Insurance Company. Leverance was killed in an auto accident while driving an Enterprise rental car. He was drunk at the time. Gulf contended before the trial court and contends here that it should not have to pay the Estate of Phillip R. Leverance because of an exclusion in its policy stating that it will not pay when the renter was driving while intoxicated. But the trial court held, and we agree, that because Leverance did not, with regard to the rental in question, receive a copy of the policy or a summary

outlining the provisions and limitations of the policy, Gulf may not assert the exclusion. We also agree with the trial court that the Estate was entitled to prejudgment interest on the strength of its offer to settle. We affirm.

¶ 2. The following facts are relevant to this appeal. On November 1, 1999, Gulf issued a PAI policy to Enterprise. Under this policy, Gulf agreed to provide accidental death insurance to Enterprise's renters. Pursuant to the PAI policy's "Benefits Schedule," Gulf provided Enterprise with the option of offering two levels of accidental death coverage to its insured renters, either $50,000 or $100,000. When a renter paid Enterprise the premium for the accidental death coverage, he or she was insured under the PAI policy only for the duration of the rental agreement under which he or she purchased that coverage. The PAI policy expressly required Enterprise to provide each renter with written notice of the terms and conditions of the PAI coverage, including the exclusions, at the commencement of each and every rental agreement:

> There shall be delivered to each Insured Renter a statement summarizing the insurance protection to which he [or she] is entitled, to whom payable, and such limitations and requirements as may pertain to the insurance afforded hereunder.

Gulf's assistant vice president of claims summarized the reasoning behind this requirement: "[T]he consumer needs to be aware of what they pay for, the coverage they have elected to purchase." To fulfill the policy's notice requirement, Enterprise required its employees to provide a "ticket jacket" to each renter at the commencement of each and every rental agreement. Among other things, the ticket jacket summarizes the

terms and conditions of the PAI coverage, including the exclusion for an accident that occurs while the renter is under the influence of alcohol. Gulf's assistant vice president of claims also explained that the company requires the summary to be delivered "[s]o that the customer understands that there are exceptions. They understand the benefits and the exclusions of the Personal Accident Insurance."

¶ 3. From December 18, 1999, until his death on December 16, 2000, Leverance rented cars from Enterprise on nine different occasions. These rentals were documented by nine separate rental agreements. Each rental agreement pertained to different cars and had a different contract number and a different rental period. All of Leverance's rental agreements included PAI coverage.

¶ 4. On November 30, 2000, Leverance went to an Enterprise office to rent a car. Enterprise did not provide Leverance with a copy of the rental agreement or the accompanying ticket jacket on that date. Enterprise did not prepare the rental agreement until after the office had closed for the day, which was approximately an hour and a half after Leverance left the office. Leverance did not sign the agreement. Instead, the Enterprise branch manager simply wrote "SOF"—an abbreviation for "signature on file"—on each of the lines where Leverance's signature or initials was required. According to the agreement, Leverance had paid $3 per day for $100,000 in PAI coverage.

¶ 5. On December 16, 2000, Leverance and his passenger, Jacquelyn Kozlik, were killed in an accident involving Leverance's Enterprise rental car. Leverance was under the influence of alcohol at the time of his death. In 2001, Leverance's Estate sued Gulf, seeking to recover the $100,000 PAI death benefit from

Leverance's November 30 rental agreement. Gulf had denied coverage based on the "alcohol exclusion," which denied benefits for any accident that occurred while the insured was under the influence of alcohol or other intoxicants.

¶ 6.   On March 15, 2002, the Estate served on Gulf an offer to settle its claim. In response, Gulf filed a motion in limine to preclude Kozlik's family members from testifying at trial and a motion to remove the Kozliks from the caption in this case. As Gulf pointed out, the only claims by the Kozliks were against Enterprise, and pursuant to both the court's order dismissing Enterprise on December 21, 2001, and the court's order approving the minor settlement of Jaden Kozlik on February 20, 2002, neither the Kozliks nor Enterprise remained in the case. The trial court granted both of Gulf's motions. Gulf rejected the Estate's offer and the claim proceeded to trial.

¶ 7.   Following a bench trial, the court determined that Gulf could not rely upon the exclusion to deny coverage and awarded to the Estate the amount of the PAI death benefit. The court reasoned that Enterprise had breached its contractual duty to deliver to Leverance a summary of the terms and conditions of the November 30, 2000 rental agreement and, as a result, Gulf was not entitled to assert the alcohol exclusion. In addition, the court awarded to the Estate prejudgment interest pursuant to Wis. Stat. § 807.01 (2001–02).[1] Gulf appeals.

■■

¶ 8.   We begin with the threshold issue of whether the Estate is entitled to the $100,000 PAI death benefit

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

pursuant to Leverance's November 30, 2000 rental agreement. It is well established that a claim for benefits under an insurance policy gives rise to a shifting burden of proof. The claimant bears the initial burden to prove that his or her loss falls within the policy's broad grant of coverage. *Glassner v. Detroit Fire & Marine Ins. Co.*, 23 Wis. 2d 532, 536, 127 N.W.2d 761 (1964). If the claimant meets this burden, the burden shifts to the insurer to prove that an exclusion precludes coverage for the loss. *Id.* Applying this standard to the instant case, it is undisputed that the Estate met its burden to prove that Leverance's death fell within the broad grant of the policy's PAI coverage. Hence, the question narrows to whether Gulf has proven that the alcohol exclusion precludes coverage.

¶ 9. The Estate argues that despite the policy's clear exclusion for alcohol-related accidents, Gulf failed to satisfy its burden because Enterprise did not put Leverance on notice of the exclusion by providing him with a summary of the policy's coverage and limitations. Gulf responds that the trial court erred in finding that Leverance did not receive notice of the exclusions in the PAI coverage pursuant to his November 30, 2000 rental agreement. In the alternative, Gulf argues that even if Leverance did not receive a copy of the policy or the summary of its terms and limitations, it is nevertheless entitled to rely on the alcohol exclusion.

██

¶ 10. We first address whether Leverance received notice of the alcohol exclusion. The issue of whether an insured has received notice of exclusions contained in his or her insurance coverage is an issue of fact. We will not overturn a trial court's findings of fact unless clearly erroneous. Wis. Stat. § 805.17(2).

¶ 11.  At the conclusion of the trial in this case, the trial court found, among other things:

4.  That Phillip Leverance was in Enterprise's office on November 30, 2000, when the Rental Agreement at issue was printed. However, Enterprise failed to deliver said agreement, along with a summary of the limitations of Gulf's Personal Accident Insurance, to Leverance on that date or any date thereafter.

5.  That it was clear that Phillip Leverance never received a summary of the limitations of Gulf's Personal Accident Insurance policy for the November 30, 2000 Rental Agreement as required by the contract of insurance between Enterprise and Gulf.

. . . .

8.  That Gulf's actual policy of Personal Accident Insurance was never delivered to Phillip Leverance.

These findings are supported by overwhelming evidence in the trial court record. Enterprise's loss control manager and branch manager both testified that on November 30, 2000, Leverance went to an Enterprise office and rented a car. Enterprise's loss control manager further testified that there was a new rental contract opened on November 30 to document Leverance's rental. The loss control and branch managers additionally testified that despite the need to have a renter sign his or her rental agreement to verify that the renter has notice of the terms and conditions of the contract and applicable insurance, Leverance was not asked to, nor did he, sign the November 30, 2000 rental agreement. Indeed, both witnesses confirmed that En-

499

terprise did not prepare the November 30, 2000 rental agreement until approximately an hour and a half after Leverance had left the office. Finally, both managers testified that Leverance did not receive a copy of the policy or ticket jacket on November 30 and neither of the witnesses had any knowledge of whether a copy of the policy was ever given to Leverance. Nothing in the record contradicts any of this evidence. We therefore conclude that the trial court correctly determined that Leverance did not have notice of the terms and conditions contained in the November 30 rental agreement.

■

¶ 12.  Having established that Leverance did not receive any notice of the terms and conditions of the November 30 rental agreement, we now turn to the question of whether Gulf is nonetheless entitled to rely on the alcohol exclusion in the PAI coverage. We are not aware of any cases in Wisconsin that specifically speak to whether an insurer can rely on policy exclusions when it fails to inform the insured of the policy's coverage and limitations. We, therefore, turn to other jurisdictions for guidance.

¶ 13.  When faced with this issue, other courts have held that an insurer may not deny coverage based on an exclusion in the policy if the insurer did not provide the insured with a copy of the policy or some other documentation of its terms. *Wayne Chem., Inc. v. Columbus Agency Serv. Corp.*, 426 F. Supp. 316, 323–24 (N.D. Ind. 1977), *aff'd as modified on other grounds*, 567 F.2d 692 (7th Cir. 1977); *Rucks v. Old Republic Life Ins. Co.*, 345 So. 2d 795, 797–98 (Fla. Dist. Ct. App. 1977); *Breeding v. Mass. Indem. & Life Ins. Co.*, 633 S.W.2d 717, 718–20 (Ky. 1982); *Gardner v. League Life Ins. Co.*, 210 N.W.2d 897, 898–99 (Mich. Ct. App. 1973); *Farmers Ins. Exch. v. Call*, 712 P.2d 231, 236–37 (Utah 1985);

*Gen. Motors Acceptance Corp. v. Martinez*, 668 P.2d 498, 501–02 (Utah 1983); *Safeco Ins. Co. v. Dairyland Mut. Ins. Co.*, 446 P.2d 568, 570 (Wash. 1968); *Brown Mach. Works & Supply Co., Inc. v. Ins. Co. of N. Am.*, 659 So. 2d 51, 58 (Ala. 1995); *Kippen v. Farm Bureau Mut. Ins. Co.*, 421 N.W.2d 483, 484–87 (N.D. 1988). *See generally*, Thomas M. Fleming, Annotation, *Insurer's Duty, and Effect of its Failure, to Provide Insured or Payee with Copy of Policy or Other Adequate Documentation of its Terms*, 78 A.L.R. 4th 9 (1990). We recognize that some of the holdings are based upon statutory provisions requiring delivery of the policy or a certificate of insurance to the insured. *See, e.g., Brown Mach. Works & Supply*, 659 So. 2d at 58 (concluding that an insurer may be estopped to deny coverage based on an exclusion in the policy where the insurer fails to comply with a statutory mandate that the insurer deliver a copy of the policy to the insured); *Gen. Motors Acceptance Corp.*, 668 P.2d at 501 (determining that an exclusion in a policy was invalid where the insured was unaware of it and, contrary to a specific notification statute, was not provided with a copy of the policy stating its coverage and restrictions); *Breeding*, 633 S.W.2d at 718–19 (holding that insurer could not rely on an exclusion for alcohol-related accidents where it had failed to comply with the statutorily imposed duty to provide insureds with a certificate of insurance summarizing coverage and restrictions).

¶ 14. Other courts, however, have held that, in the absence of such a statute, public policy nevertheless requires notice to the insured of the essential terms of coverage. Utah appellate courts have consistently held that exclusions from coverage under an insurance policy, even if clear, are ineffective unless they are communicated to the insured in writing. In *Farmers*

*Insurance Exchange*, 712 P.2d at 236–37, the Utah Supreme Court concluded that an automobile insurance policy provision excluding insurance coverage for injuries sustained by household members was invalid where a copy of the policy was never provided to the insured. The court reasoned, "public policy requires that persons purchasing such policies are entitled to be informed, in writing, of the essential terms of insurance contracts, especially exclusionary terms." *Id.* at 236. The Michigan Court of Appeals, in *Gardner*, stated that basic fairness requires that notice of insurance coverage be given to the benefactor of such insurance:

> The equity conscience of this Court, having been aroused, finds that it is beyond question that the borrower subjected to eligibility requirements be given notice thereof. The fact that the present insurance scheme, with premiums being paid by the credit union, places each member borrower in the status of a third-party beneficiary and that each borrower under the group policy has no individual identity cannot change this basic tenet of fairness . . . . The injustice of informing a disabled borrower at the time the claim is filed that he has no insurance protection is obvious and the need for notice is beyond peradventure.

*Gardner*, 210 N.W.2d at 898. Citing to both *Farmers Insurance Exchange* and *Gardner*, the North Dakota Supreme Court concluded that an insurer has a duty to provide a copy of a policy or other documentation of the terms of coverage and, when it fails to do so, it may not rely upon policy defenses to preclude coverage. *Kippen*, 421 N.W.2d at 484–87.

¶ 15.   We agree with these courts that it would be unjust to permit an insurance company to accept premiums and then deny liability based on an exclusion of

which the insured was not aware because the insurance company had not informed him or her of the exclusion or given him or her the means to ascertain its existence. Purchasers of insurance policies, like the one at issue here, commonly rely on the assumption that they are fully covered by the insurance that they buy. *See Farmers Ins. Exch.*, 712 P.2d at 236–37; *Louisiana Maint. Servs., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250, 1252–53 (La. 1993) (observing that "[n]otice of any exclusionary provisions is essential because the insured will otherwise assume the desired coverage exists."). If an insured is not given a copy of the policy, he or she cannot take whatever action is appropriate to protect his or her interests nor can he or she ensure that the coverage, which he or she thinks has been contracted for, is actually provided. We therefore hold that an insurer may not deny coverage based on limitations or exclusions in a policy, even if clearly stated, where the insured was not otherwise informed of such provisions.

¶ 16.  Gulf argues that because Leverance received notice of the coverage exclusions from at least one of his prior rental agreements, the law we have cited should not apply. We do not agree. As the trial court observed, each rental agreement constituted a separate and distinct contract. According to the terms of the PAI policy itself and the testimony of Gulf's vice president, the prior insurance was only valid during the period of the rental of the vehicle; once the vehicle was returned, the insurance policy was terminated and the renter had to then purchase new PAI coverage when renting again. Thus, while it is possible that Leverance may have been previously aware of the alcohol exclusion and may even have assumed that it also applied to the November 30 rental agreement, the fact remains

that the November 30 agreement was not a renewal or continuation of the previous agreements; it was an independent contract—and although unlikely, it was possible that the terms of the insurance policy had changed.[2]

¶ 17.   Despite contractual language requiring Enterprise to provide Leverance with a summary of the policy's coverage provisions and limitations, Leverance never received a copy of the policy or the ticket jacket summarizing the policy's terms and conditions. As Gulf's assistant vice president of claims admitted, the company required delivery so that the insured would understand the benefits and exclusions of the policy. Because Enterprise chose not do so, Leverance had no opportunity to review the policy's terms and conditions and, consequently, no notice of the alcohol exclusion. Accordingly, we conclude that Gulf has failed to meet its burden that the alcohol exclusion precludes coverage and the trial court properly awarded the $100,000 in PAI benefits to the Estate.

■■

¶ 18.   We now turn to the second issue in this appeal—whether the Estate is entitled to prejudgment interest pursuant to WIS. STAT. § 807.01. Gulf argues that the Estate's offer of settlement was ambiguous because it referenced the Kozliks as well as the Estate and, consequently, Gulf has no duty to pay the interest

---

[2] We note that had the parties desired, they may have been able to prepare one rental agreement that would have subsumed all of the terms and conditions of the multiple, different rental agreements upon which Leverance's acceptance could have been evinced through his signature. *See* Hertz #1 Club, http://www.hertz.hr/en/club.htm (last visited Oct. 22, 2003) (program where the customer signs only a single contract for all car rentals for one year). Enterprise chose not to do so.

award. We review the validity of a statutory settlement offer de novo. *See Staehler v. Beuthin*, 206 Wis. 2d 610, 624, 557 N.W.2d 487 (Ct. App. 1996).

¶ 19.   WISCONSIN STAT. § 807.01(4) provides in pertinent part:

> If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at the annual rate of 12% on the amount recovered from the date of the offer of settlement until the amount is paid.

However, a settlement offer that is ambiguous or does not comply with § 807.01 is invalid. *See Prosser v. Leuck*, 225 Wis. 2d 126, 136–37, 592 N.W.2d 178 (1999). An offer is ambiguous if it is susceptible to more than one reasonable interpretation. *Wausau Underwriters Ins. Co. v. Dane County*, 142 Wis. 2d 315, 322, 417 N.W.2d 914 (Ct. App. 1987). However, an offer is not ambiguous simply because a party can "conjure up a remotely possible second interpretation." *U.S. Fire Ins. Co. v. Ace Baking Co.*, 164 Wis. 2d 499, 503, 476 N.W.2d 280 (Ct. App. 1991) (citation omitted).

¶ 20.   Due to the procedural posture of the case at the time of the offer, Gulf knew that the Kozliks were no longer a party to the action. The record establishes that at the time of the Estate's offer of settlement, Gulf had already settled with the Kozliks and, in fact, had filed a motion, which the trial court granted, to have the Kozliks' names removed from the caption. Hence, the Estate's offer was susceptible to only one reasonable interpretation—the offer of settlement was intended as an offer to settle only the Estate's claim. The inclusion

of the Kozliks' names was merely a scrivener's error. We therefore reject Gulf's contentions that the settlement offer was ambiguous and conclude that the Estate is entitled to prejudgment interest awarded pursuant to WIS. STAT. § 807.01.

*By the Court.*—Judgment affirmed.