**Matt SMITH, Chad Smith, Nicole Raley and Sara Smith by her guardian Sally Drew, Plaintiffs,**

v.

**STONEBRIDGE LIFE INSURANCE Company, Defendant.**

**No. 06–C–180–C.**

United States District Court, W.D. Wisconsin.

Feb. 12, 2007.

Josephine K. Benkers, Quarles & Brady, Milwaukee, WI, for Defendant.

## OPINION AND ORDER

CRABB, District Judge.

In this civil action for monetary damages, plaintiffs Matt Smith, Chad Smith, Nicole Raley and Sara Smith contend that defendant Stonebridge Life Insurance Company wrongly denied payment of life insurance benefits to which they believe they are entitled as a result of their father's accidental death. Douglas Smith and his passenger were killed when his truck went off the road, flipped and hit a tree. There were no witnesses to the accident, but the facts show that the roads in the area were snow-covered and slippery and that Smith's blood alcohol level at the time of the accident was .164g/100ml, more than twice the legal limit. Defendant contends that plaintiffs are not entitled to benefits under the policy because two policy exclusions apply, namely, exclusions from coverage for injuries that (1) were caused by or resulted from a blood alcohol level in excess of .10g/100ml or (2) occurred while the claimant was committing or attempting to commit a felony.

Originally, plaintiffs filed this action in the Circuit Court for Sauk County. Defendant removed it to this court on April 5, 2006. Jurisdiction is present. 28 U.S.C. § 1332.

Currently before the court are the parties' cross-motions for summary judgment. Because the "intoxication clause" in defendant's insurance agreement is ambiguous, I have construed it in favor of coverage. The "felony clause" is not ambiguous, so I have applied it as written. Because a reasonable trier of fact could not conclude from these facts that Smith's blood alcohol level was "*the* cause" of his accident or that Smith was committing a felony at the time of his death, plaintiffs' motion for summary judgment will be granted.

From the proposed findings of fact, I find the following facts to be material and undisputed.

## UNDISPUTED FACTS

### A. *Parties*

Plaintiffs Matt Smith, Chad Smith, Nicole Raley and Sarah Smith are Douglas Smith's children and are listed as beneficiaries on his Stonebridge life insurance policy. All of the plaintiffs are citizens of Wisconsin. Defendant Stonebridge Life Insurance Company is incorporated in Vermont and has its principal place of business in Maryland.

### B. *December 5-6, 2004*

Douglas Smith and Diane Winecke were killed when Smith's truck, with Smith at the wheel, skidded 41 feet off of a rural road, hit an embankment, flipped over and hit a tree. The accident occurred sometime between 9:30 p.m. on Sunday, December 5, 2004 and 6:20 a.m. on Monday, December 6, 2004. Because there were no witnesses, the details and exact time of the accident are unknown. What is known is that the accident occurred at a curve in the road at the crest of a hill on a night when roads in the area were snow-covered and slippery, and that, as the parties have stipulated, Smith's blood alcohol level was .164g/100ml at the time of the accident.

On the night of the accident, Smith and Winecke had stopped at Stormy's Tavern in Leland, Wisconsin; they left the tavern sometime before 9:30 p.m. Allan Kraemer, a patron at Stormy's Tavern that evening, said good-night to Smith as he left the bar and observed that Smith "seemed like he had good composure" and "seemed calm and collected to the best of [my] knowledge." Other than saying goodnight, Kraemer had not talked to Smith or spent any time with him that evening. The owner of the tavern, Donald Diske, believed that Smith was "nowhere near impaired" when he left Stormy's Tavern, but does not remember how much Smith had to drink that evening.

The air had been moist all day on December 5, 2004. By 7:00 or 7:30 p.m. "rain or mist" began to fall. Donald Diske called his wife Virginia at "probably quarter to nine, nine o'clock" that evening to ask her for a ride home. By that time, snow was falling and the ground was slushy. Virginia Diske recalls that when she drove to pick her husband up from the tavern, it was snowing hard, making it difficult to see. She kept her speed to 15–20 miles an hour because of the conditions.

Sauk County Sheriff's Deputy James Hodges was on patrol from 10:30 p.m. on December 5, 2004 until the morning of December 6, 2004. He recalls that the temperature hovered around freezing that evening and that the weather conditions included rain, fog and snow. Hodges reduced his speed because of slippery roads. The following morning, the temperature remained "near freezing" and the conditions changed from snow to rain and fog. In addition to Smith's truck, 17 other vehicles went off the road in Sauk County during the evening of December 5, 2004 and the morning of December 6, 2004.

Sometime around 6:20 a.m. on Monday, December 6, 2004, a snow plow operator discovered Smith's truck in the ditch along Orchard Road, a lightly used rural road. The snow plow operator reported the accident to the Sauk County sheriff's department at 6:22 a.m. and Hodges was dispatched to investigate. On his way to the accident scene, Hodges encountered patches of "black ice." When Hodges arrived at the scene, he observed approximately one inch of snow on the ground. During the sheriff department's investigation of the accident, the roof of Smith's truck was removed and Smith's and Winecke's bodies were extracted from the truck. At this time, Hodges smelled "an

overwhelming odor of intoxicants" and observed numerous unopened cans of Bud Lite inside the truck. Hodges prepared a Wisconsin Motor Vehicle Accident Report, in which he noted that alcohol was present. Under a column marked "driver factors" that contributed to the accident, Hodges listed: going too fast for the conditions, inattentive driving and failing to have control of the vehicle. From his investigation of the scene, Hodges believed that alcohol was a substantial factor in causing the accident.

Sauk County Coroner Betty Hinze arrived at the scene of the accident at approximately 7:20 a.m. She took a sample of Smith's blood and sent it to the Wisconsin State Laboratory of Hygiene for testing. That test showed a blood alcohol content of .164g/100ml.

At this blood alcohol level, Smith would been intoxicated and would have experienced some or all of the following symptoms: emotional instability; loss of critical judgment; impaired perception, memory and comprehension; impaired sensatory response; impaired reaction time; impaired visual acuity, peripheral vision, depth of field and glare recovery; sensory-motor incoordination; impaired balance and drowsiness. A .164g/100ml level of alcohol would impair a person's ability to make proper adjustments for traffic, road and weather conditions, recognize the effects of various driving conditions and recognize his own physical and mental limitations.

Forensic science consultant Anne Rummel Manly reviewed the following materials regarding Smith's accident: the Motor Vehicle Accident Report, the Sauk County Coroner's Report, the Corner's Report of Motor Vehicle Death, the Wisconsin State Laboratory of Hygiene Report, the initial report of the Sauk County Sheriff's Department; and the State of Wisconsin Death Certificate. From this review,

Manly concluded with a reasonable degree of scientific certainty that Smith's blood alcohol level made "a significant contribution to the accident."

### C. Douglas Smith's Life Insurance Policy

On approximately November 3, 1998, defendant (then known as J.C. Penney Life Insurance Company) issued a life insurance policy to Douglas Smith. The face value of the policy is $140,000 for a death resulting from "a collision or crash of a private Passenger Automobile." Several exclusions apply. The policy states that "No benefit shall be paid for injury that: ... (4) is caused by or results from the Covered Person's blood alcohol level being .10 percent weight by volume or higher, ... (6) occurs while the Covered Person is committing or attempting to commit an assault or felony." The policy was in force at the time of Smith's death. Plaintiffs have provided defendant with the required notice and proof of death.

### OPINION

#### A. Choice of Law

■ The parties have assumed in their briefs that Wisconsin law applies. Under *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), when diversity of citizenship is the basis for subject matter jurisdiction, the district court looks to the law of the forum state to determine which state's substantive law should be applied. Wisconsin courts presume that Wisconsin law applies unless it is clear that non-forum contacts have greater significance. *State Farm Mutual Auto. Insurance Co. v. Gillette*, 2002 WI 31, ¶51, 251 Wis.2d 561, 641 N.W.2d 662. I will follow the parties' lead and make the assumption that Wisconsin law applies. *FutureSource LLC v. Reuters Ltd.*, 312 F.3d 281, 283

(7th Cir.2002) ("[T]here's no discussion of choice of law issues, and so we apply the law of the forum state.").

## B. *Interpretation of Insurance Contracts Under Wisconsin Law*

 In Wisconsin, "[t]he rules governing construction and interpretation of insurance policies are those applicable to contracts generally." *Kraemer Brothers, Inc. v. United States Fire Insurance Co.,* 89 Wis.2d 555, 562, 278 N.W.2d 857, 860 (1979) (citations omitted). Thus, courts should construe insurance policies "to give effect to the intent of the parties as expressed in the language of the policy." *Folkman v. Quamme,* 2003 WI 116, ¶ 12, 264 Wis.2d 617, 665 N.W.2d 857 (citing *Danbeck v. American Family Mutual Insurance Co.,* 2001 WI 91, ¶ 10, 245 Wis.2d 186, 629 N.W.2d 150).

 To avoid binding an insurer to risks that it did not contemplate, an insurance policy should not be rewritten by judicial construction unless language related to a disputed coverage issue is ambiguous. *Maas v. Ziegler,* 172 Wis.2d 70, 79, 492 N.W.2d 621, 624 (1992). When the language of a policy is unambiguous it should be enforced as written, without resort to rules of construction or principles in case law. *Hull v. State Farm Mutual Automobile Insurance Co.,* 222 Wis.2d 627, 637, 586 N.W.2d 863 (1998). However, if the language of an insurance policy is ambiguous, the ambiguous language should be construed against the insurer and in favor of coverage. *Badger Mutual Insurance Co. v. Schmitz,* 2002 WI 98, ¶ 51, 255 Wis.2d 61, 647 N.W.2d 223. Insurance policy language is ambiguous "if it is susceptible to more than one reasonable interpretation." *Danbeck,* 2001 WI 91, ¶ 10, 245 Wis.2d 186, 629 N.W.2d 150.

## C. *Exclusion Clauses*

By its general terms, Douglas Smith's life insurance policy provides benefits in the case of death that results from "a collision or crash of a private Passenger Automobile." The parties do not disagree that Smith died as a result of an automobile crash. However, defendant contends that no benefits are due because two policy exclusions apply. First, defendant contends that plaintiffs may not collect the policy proceeds because Smith's death was "caused by or result[ed] from the Covered Person's blood alcohol level being. 10 percent weight by volume or higher." Alternatively, defendant contends that Smith's death "occur[ed] while the Covered Person [was] committing or attempting to commit an assault or felony."

 Under Wisconsin law and general insurance law principles, a claim for insurance benefits "gives rise to shifting burdens of proof." *Kozlik v. Gulf Insurance Co.,* 2003 WI App 251, ¶ 8, 268 Wis.2d 491, 673 N.W.2d 343; *Rekowski v. Metropolitan Life Insurance Co.,* 417 F.Supp.2d 1040, 1048 (W.D.Wis.2006) (citing *Jenkins v. Montgomery Industries, Inc.,* 77 F.3d 740, 743 (4th Cir.1996); *McGee v. Equicor–Equitable HCA Corp.,* 953 F.2d 1192, 1205 (10th Cir.1992); and *Cleary v. Knapp Shoes, Inc.,* 924 F.Supp. 309, 315–16 (D.Mass.1996)). First, a claimant must prove that the loss falls within the policy's broad grant of coverage. *Kozlik v. Gulf Insurance Co.,* 2003 WI App 251, ¶ 8, 268 Wis.2d 491, 673 N.W.2d 343 (citing *Glassner v. Detroit Fire & Marine Insurance Co.,* 23 Wis.2d 532, 536, 127 N.W.2d 761 (1964)). If the claimant meets this burden, the burden shifts to the insurer to prove that an exclusion precludes coverage for the loss. *Id.*

 Plaintiffs have shown that Smith's death occurred as a result of an automobile accident, normally covered under the poli-

cy. Therefore, the burden shifts to defendant to prove by a preponderance of the evidence that Smith's death fell into one of the policy's exclusions.

### 1. *Intoxication exclusion*

■ As discussed above, the first step in construing a disputed term in an insurance policy is to determine whether the language is ambiguous. The parties disagree whether the phase "caused by or results from the Covered Person's blood alcohol level being .10 percent weight by volume or higher" is ambiguous. The question is whether, as defendant contends, the only reasonable interpretation of the phrase is that it prohibits recovery of insurance benefits where an elevated blood alcohol level was "*a* cause" of a collision, or, as plaintiffs argue, a reasonable insured would not know from the language whether it meant benefits would be denied if an elevated blood alcohol level was "*the* cause," "*a* cause" or "*a substantial* cause" of a collision. If plaintiffs are correct, the language is ambiguous. (The parties do not contend that the phrase "results from" has a different meaning from the phrase "caused by," apparently assuming that the phrases both refer to causation. In the absence of any dispute about the correctness of this assumption, I will do the same.)

Causation is a notoriously tricky idea to pin down. No lesser minds than Aristotle have wrestled with its meaning. Within the legal context, degree of causation is a central inquiry for assignment of tort and criminal liability. Defendant argues that the Wisconsin Jury Instructions establish the "popular—legal—definition" of cause as a "substantial factor" in bringing about a result. However, the Wisconsin legal community's convention does not offer a definitive answer to what a "reasonable insured" would believe "cause" to mean as it is used in defendant's insurance policy. If anything, the fact that juries in Wisconsin are instructed about the definition of "cause" they should adopt when deliberating suggests that jurors may differ in their understanding of the term.

Questions about the nature of causation do not just reflect legal and philosophical theory; they reflect a tension regarding the general understanding of the term "cause." One example is the variety in dictionary definitions of "cause." The American Heritage Dictionary of the English Language defines "cause" to be "*the producer of an effect, result, or consequence*" and "*the one*, such as a person, event, or condition, that is responsible for an action or result." *American Heritage Dictionary of the English Language*, 296 (4th ed.2000) (emphasis added). This definition suggests that cause means something that is solely responsible for bringing about a result. In contrast, the New Oxford American Dictionary defines "cause" as "*a* person or thing that gives rise to an action, phenomenon, or condition." *The New Oxford American Dictionary*, 273 (2001) (emphasis added). This definition suggests the possibility of multiple causes for any given result.

A term such as cause that has been the subject of great philosophical and legal debate, as well as contradictory dictionary definitions, may well mean different things to different people. A reasonable insured could have read defendant's insurance policy to exclude coverage when a blood alcohol level was "a cause," "a substantial cause," or only when it was "the sole cause" of an injury. Because a reasonable insured may have understood "cause" to mean any of these things, it is ambiguous as used in defendant's insurance policy. As a result, I must construe the term against defendant and for coverage. The definition of cause that is narrowest and would result in exclusion in the fewest settings is "the sole cause." The rule of

construction that leads to this definition is premised on the recognition that insurance companies may draft their contracts to identify and limit exposure to risks, but requires them to do so explicitly. *See, e.g., Garriguenc v. Love,* 67 Wis.2d 130, 134–35, 226 N.W.2d 414 (1975). Had defendant wished to eliminate any ambiguity surrounding the meaning of causation, it could have done so easily. In its policy, defendant could have defined cause as "a substantial factor" or given it any of the other definitions it now urges the court to adopt. Having failed to do so, it cannot look to the court to correct what appears to be its drafting oversight.

 Nevertheless, construction of the policy language does not end the inquiry into whether the exclusionary clause applies. I must now consider whether either party is entitled to summary judgment with respect to whether Smith's blood alcohol level was "the sole cause" of his fatal car accident.

As noted above, defendant bears the burden of demonstrating the application of an exclusionary clause in its insurance policy. Therefore, to withstand plaintiffs' motion for summary judgment, defendant must have adduced facts from which a reasonable trier of fact could infer that Smith's intoxication was "the cause" of his car accident. From the undisputed facts, it is not possible to conclude that an elevated blood alcohol level was "the cause" of Smith's accident. There were no witnesses to the accident, so no one can say with certainty what happened. All that is known is that Smith and Winecke were killed when Smith failed to negotiate a curve at the crest of a hill at some point on the evening of December 5 or early in the morning of December 6. It is undisputed that the roads in the area were snow-covered and slippery, with occasional patches of black ice, and that seventeen other vehicles landed in ditches in Sauk

County during the same time period. These facts suggest strongly that, at the time of the accident, road conditions in the area were so difficult that even sober drivers struggled to drive safely. Smith's accident occurred at a curve at the top of a hill, where the road was covered with snow, and perhaps with ice as well. Thus, although the precise details of Smith's accident remain unknowable, it would be unreasonable to discredit entirely the role that the conditions played in causing it.

Defendant proposed as fact (and plaintiffs did not dispute the proposal) that the effects of alcohol were *a cause* of Smith's accident. Indeed, the facts suggest that Smith's alcohol consumption was a "substantial" factor in his accident. A blood alcohol level of .164g/100ml impairs a driver's judgment and his ability to make proper adjustments for traffic, road and weather conditions, recognize the effects of various driving conditions and recognize his own physical and mental limitations. It is probable that Smith's alcohol consumption was a factor in the accident, but defendant's burden is to show that Smith's blood alcohol level was "the cause" of this accident. The unique circumstances of this case (including the absence of witnesses to the accident and the dangerous winter road conditions) make it impossible for defendant to do so. Without evidence that Smith's death was "caused by or result[ed] [solely] from his intoxication," defendant cannot rely on the exclusion provision to bar plaintiffs from collecting the policy proceeds.

### 2. *Felony exclusion*

 In response to plaintiffs' motion for summary judgment, defendants contend that the insurance benefits are not payable because Smith's accident occurred while he was committing a felony. Specifically, defendants argue that Smith committed the felony of homicide by intoxicated

use of a motor vehicle when he drove his truck with a blood alcohol level of .164g/100ml (more than twice the legal limit in Wisconsin) and killed Winecke. Wis. Stat. § 940.09.

As a preliminary matter, I note that defendant devoted very little space or effort to the development of this argument or facts relevant to it. Defendant's brief includes a total of six sentences in support of this argument, only two of which attempt to apply Wisconsin law to the facts of this case. Although there is no minimum word count for success, it is well established that arguments not developed in any meaningful way are waived. *Central States, Southeast and Southwest Areas Pension Fund v. Midwest Motor Express, Inc.*, 181 F.3d 799, 808 (7th Cir. 1999). Defendant's argument regarding the felony exclusion is sufficient to avoid a waiver, but barely.

In support of its argument that the felony exclusion bars plaintiffs from recovering benefits under the life insurance policy, defendant cites Wis. Stat. § 940.09, which provides that "Any person who does any of the following may be penalized as provided in sub. (1c): (a) causes the death of another by the operation or handling of a vehicle while the person has a prohibited alcohol concentration, as defined in s. 340.01(46m)." Subsection (1c) of the statute provides that a person who violates the statute is guilty of a Class D felony. At the time of the accident, Wisconsin's legal alcohol concentration was .08g/100ml.

Defendant's argument assumes that Smith was committing a felony at the time that he died. This assumption is problematic because it requires the court to base a decision on bare speculation about what happened during the accident and what would have happened had Smith survived. For example, Wisconsin law "recognize[s] there may be intervening factors between the fact of operating an automobile under the influence of intoxicants and the death of another," *State v. Caibaiosai*, 122 Wis.2d 587, 598, 363 N.W.2d 574 (1985), and therefore provides an affirmative defense that may be asserted by a defendant. Although Smith's hypothetical chance of prevailing on this defense is debatable, it is enough to prevent this court from determining that he committed a felony, particularly on the sparse record before the court. The dearth of facts about the accident that make it impossible to reach a definitive determination regarding causation also make it impossible to reach an informed determination that Smith was committing a felony at the time he died.

As discussed above, a defendant insurance company bears the burden of establishing that a policy exclusion bars recovery of benefits. Where the party opposing a motion for summary judgment will bear the burden of proof on an issue at trial, it must affirmatively establish a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). From the facts adduced, a reasonable trier of fact could not return a verdict for defendant. Therefore, plaintiffs' motion for summary judgment will be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

ORDER

IT IS ORDERED that:

1. The motion for summary judgment of plaintiffs Matt Smith, Chad Smith, Nicole Raley and Sara Smith is GRANTED.

2. The motion for summary judgment of defendant Stonebridge Life Insurance is DENIED.

The clerk of court is directed to enter judgment for plaintiffs and close this case.