**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 49075**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: February 2, 2023** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ROBERT WESLEY WARDEN, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Idaho County. Hon. Gregory FitzMaurice, District Judge.

Order denying motion for new trial, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Andrea W. Reynolds, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

LORELLO, Chief Judge

Robert Wesley Warden appeals from the order denying his motion for a new trial. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Following a court trial in 2018, the district court judge found Warden guilty of felony driving under the influence (DUI).[1] Just under two years later, Warden filed a pro se motion for a

_____

[1]  This Court affirmed Warden's judgment of conviction and sentence in an unpublished opinion. *State v. Warden*, Docket No. 46136 (Ct. App. Apr. 12, 2019).

1

new trial.[2] Warden argued several pieces of newly discovered evidence warranted a new trial. As relevant to this appeal, Warden asserted that "statements" from two detention deputies obtained "through the Freedom of Information Act" after his trial "would have been favorable to him." The statements, memorialized in jail logs authored by the detention deputies, relate that the detention deputies observed that Warden (despite having alcohol on his breath) was coherent, steady on his feet, initially cooperative, and without bloodshot eyes or slurred speech while being booked into jail.[3] After appointing counsel and holding a hearing, the district court denied Warden's motion, concluding the jail logs did not "substantially undermine the [district court's] confidence in the guilty verdict."

More than one month later, Warden filed a pro se motion for reconsideration, arguing the prosecution's failure to disclose the jail logs constituted "'structural discovery error' which violated" his rights pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Despite noting certain procedural defects in the motion, the district court denied it without a hearing, concluding the prosecution's failure to disclose the logs was not prejudicial. Warden appeals.

## II.

## STANDARD OF REVIEW

A decision on a motion for new trial is reviewed under an abuse of discretion standard. *State v. Egersdorf*, 126 Idaho 684, 687, 889 P.2d 118, 121 (Ct. App. 1995). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

---

[2]     This motion is actually Warden's second motion for a new trial; his first motion for a new trial was filed and denied prior to his initial appeal.

[3]     In email correspondence attached to an affidavit of Warden's appointed counsel, the prosecutor claims to have been unaware of the detention deputies' statements until receiving a letter from Warden that included them.

## ANALYSIS

Warden argues that the district court erred in denying his motion for new trial because testimony of the detention deputies "would likely have produced an acquittal." Warden also argues that the district court evaluated his *Brady* claim using the wrong legal standard. The State responds that the district court properly concluded the "limited and partially cumulative" new evidence Warden presented did not warrant a new trial. The State further responds that various procedural irregularities are fatal to Warden's *Brady* claim and that, even if not, the claim fails on the merits. Because Warden has failed to establish the district court erred by determining the new evidence he presented was unlikely to produce an acquittal and the failure to disclose the evidence was not prejudicial, we affirm the order denying his motion for new trial.

### A. Newly Discovered Evidence

Idaho Criminal Rule 34 authorizes a trial court to order a new trial "on any ground permitted by statute." Idaho Code Section 19-2406 enumerates the exclusive grounds for granting a new trial. One such ground is when "new evidence is discovered material to the defendant," and the defendant could not, with reasonable diligence, have discovered and produced the evidence at trial. I.C. § 19-2406(7). A motion for new trial based on newly discovered evidence must disclose that: (1) the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) the evidence is material, not merely cumulative or impeaching; (3) the evidence will probably produce an acquittal; and (4) the failure to learn of the evidence was not due to a lack of diligence on the part of the defendant. *State v. Drapeau*, 97 Idaho 685, 691, 551 P. 972, 978 (1976).

Warden supported his motion for new trial with declarations and copies of jail logs authored by two detention deputies on duty at the jail to which Warden was transported following his arrest. According to Warden, he obtained the jail logs "through the Freedom of Information Act" after his trial. The jail logs describe the detention deputies' interactions with Warden during the booking process. According to the jail logs, Warden was agitated, but initially respectful and "reasonably cooperative" with the detention deputies. Although both detention deputies detected the odor of alcohol on Warden's breath, they described him as steady on his feet without slurred speech. One detention deputy also indicated that he did not observe Warden's eyes being

3

bloodshot. When the detention deputies informed Warden he was legally required to sign a fingerprint card, however, he scrawled a profanity on the fingerprint card, tore it up, and refused to sign another. The detention deputies then placed Warden in "the Max cell," informing him that he would remain there until he was ready to cooperate. The jail logs do not reflect any further interaction between Warden and the detention deputies.

Despite determining that the above-described evidence satisfied three prongs of the *Drapeau* standard (newly discovered, material, and no lack of diligence), the district court denied Warden's motion for new trial because the new evidence did not "substantially undermine the [district court's] confidence in the guilty verdict." When considering the likelihood that the jail logs would produce an acquittal, the district court stated:

> [The detention deputies] observed and had interactions with Warden, albeit a considerable amount of time had elapsed since the initial stop. However, the video evidence and testimony of the arresting officers outweigh the observations of the detention deputies. The observations of the arresting [officers'] were immediately following [an officer's] observation of suspected impaired driving. Furthermore, [one detention deputy] reported that Warden was "very animated with his body language when describing his contact with the arresting [officer] . . ." and that [Warden] wrote on, and then tore up his fingerprint cards. [The other detention deputy] reported that he detected a slight odor of alcohol on Warden and confirmed that Warden tore up his fingerprint cards. [The detention deputy] stated Warden was extremely agitated when [the detention deputy] encountered Warden.

(citations omitted). The district court further observed that, even though "the detention deputies did not observe physical manifestations of intoxication to the extent the arresting [officers] did, they did observe behavior that is indicative of intoxication and contribute to a finding of impaired driving through the totality of the circumstances." Consequently, the district court denied Warden's motion for a new trial, concluding the new evidence he presented did not "substantially undermine the Court's confidence in the guilty verdict."

Warden faults the district court for evaluating "whether [it] believes [he] is guilty" instead of "whether the evidence would have likely resulted in acquittal." Warden notes that the district court characterized the evidence presented at trial as "mixed." However, Warden does not describe precisely how the evidence was mixed. Rather, Warden makes the conclusory assertion that "he could have challenged the credibility of the arresting officers, which likely would have led to a different result" had he known, at the time of trial, about the detention deputies' observations.

4

To the extent Warden argues that the district court applied an erroneous legal standard to resolve his motion for a new trial, we are unpersuaded. Because Warden was found guilty of felony DUI in a bench trial, the district court could have responded to his motion for new trial by taking "additional testimony and entering a new judgment." *See* I.C.R. 35(a). That is, the district court could have taken testimony from the detention deputies and entered a new judgment acquitting Warden of felony DUI. However, the district court (with the same presiding judge as Warden's bench trial) did not do so. Consequently, the denial of Warden's new trial motion implies not only that the district court concluded the new evidence was unlikely to result in an acquittal, but also that the actual factfinder from Warden's bench trial, the district court, would not acquit him because of the new evidence.

Warden's argument that the district court erred in assessing the probable effect of the new evidence he presented is also unavailing. During Warden's bench trial, the State presented multiple pieces of evidence proving he was guilty of DUI under an impairment theory. To prove Warden guilty of DUI under an impairment theory, the State needed to present evidence establishing beyond a reasonable doubt that he had consumed enough alcohol to influence or affect his ability to drive a motor vehicle. *See State v. Jeske*, 164 Idaho 862, 872-73, 436 P.3d 683, 693-94 (2019). Testimony from officers and videos depicting Warden's behavior can provide such evidence. *See id.* at 873, 436 P.3d at 694. One officer testified to observing Warden's vehicle "drifting back and forth within its own lane" and then crossing the centerline once and the fog line twice. The officer further testified that, during the ensuing traffic stop, Warden's vehicle and breath smelled of alcohol, his speech was slurred, and he had bloodshot, watery eyes. After briefly stepping away to call for back-up, the officer returned to find Warden sitting in his vehicle drinking a can of beer and observed more than one empty beer can in the vehicle. Additionally, the officer testified that Warden exhibited "mood swings[;] argumentative behavior"; made nonsensical statements, such as telling the officer to "get your f[******] feet in the law"; and falsely accused him of brandishing his service weapon during the traffic stop. The preceding testimony was corroborated by testimony from another officer and bodycam video.

Furthermore, the potential favorable impact of the detention deputies' observations of Warden in support of his defense is limited. The detention deputies encountered Warden approximately eighty minutes after the initial traffic stop, diminishing the probative force of their

5

observations regarding whether Warden drove impaired. The detention deputies' observations also overlap, in large part, with other evidence admitted during Warden's trial. Video from one of the arresting officer's bodycam that was published during the court trial depicts Warden steady on his feet and moving without apparent difficulty while cooperating with one of the detention deputies. Warden's counsel highlighted this evidence during Warden's bench trial. Moreover, the detention deputies could have provided additional evidence that Warden was impaired. Specifically, both detention deputies indicated that they detected alcohol on Warden's breath and that he became agitated and uncooperative during the booking process, tearing up his fingerprint card after scrawling a profanity on it. Emotional instability can indicate alcohol impairment. *See, e.g.*, *Smith v. Stonebridge Life Ins. Co.*, 473 F. Supp. 2d 903, 907 (W.D. Wis. 2007) (observing that "emotional instability" is a symptom of alcohol intoxication); *State v. Jones*, 322 S.W.3d 141, 144 (Mo. Ct. App. 2010) (citing expert testimony that emotional instability is a symptom of alcohol intoxication). Warden has failed to show that the district court abused its discretion by concluding the new evidence he presented probably would not have resulted in an acquittal.

**B.     Failure to Disclose Jail Logs**

Warden also argues that the district court erred by denying his motion for new trial because the State's failure to disclose the jail logs was a *Brady* violation. Specifically, Warden contends that the district court applied the wrong standard to determine that he was not prejudiced by the inadvertent failure to disclose the jail logs. The State responds that a new trial motion was not a proper procedural vehicle to assert a *Brady* claim and that, even if it was, other procedural irregularities are fatal to the claim, which otherwise fails on the merits. We hold that Warden failed to show a reasonable probability that disclosure of the jail logs would have led to a different result and do not address the State's other arguments.

Due process requires the State to disclose to a defendant all material exculpatory evidence known to or possessed by the State. *See Brady*, 373 U.S. at 87. Criminal defendants seeking relief under *Brady* must establish that the evidence at issue: (1) is favorable to the accused because it is either exculpatory or impeaching; (2) was suppressed by the State, either willfully or inadvertently; and (3) was material because there is a reasonable probability that its disclosure to the defense would have led to a different result. *State v. Branigh*, 155 Idaho 404, 422, 313 P.3d 732, 750 (Ct. App. 2013).

6

Following the denial of Warden's motion for new trial, he filed a pro se motion for reconsideration, reiterating his claim that the failure to disclose the jail logs was a "structural discovery error" that violated *Brady* and asserting that the denial of his motion for new trial was an abuse of discretion and "excused" the sheriff's office "of any duty to disclose the evidence [the district court] ruled was 'material.'" Despite acknowledging "procedural deficiencies" in Warden's motion for reconsideration, the district court considered the merits of his claim that the failure to disclose the jail logs was a *Brady* violation.[4] Initially, the district court noted that, in denying Warden's motion for new trial, it had not "excused . . . any duty to disclose," but instead had "found that the newly discovered evidence did not put Warden's case in such a different light as to undermine confidence in the verdict."

When discussing the merits of Warden's *Brady* claim, the district court observed that, for a *Brady* violation to occur, the evidence at issue: (1) must be "favorable to the accused because it is exculpatory or impeaching"; (2) must "have been suppressed by the State, either willfully or inadvertently"; and (3) "the defendant must have been prejudiced." The district court then determined that the jail logs were "favorable to Warden and were inadvertently suppressed" by the State, satisfying the first two prongs of the *Brady* analysis. However, the district court further concluded that Warden failed to satisfy the third prong.

In analyzing whether Warden satisfied the third prong of the *Brady* analysis, the district court analogized to *Roeder v. State*, 144 Idaho 415, 162 P.3d 794 (Ct. App. 2007). In *Roeder*, this Court affirmed the summary dismissal of a *Brady* claim asserted in a petition for post-conviction relief because no prejudice resulted from the suppression of the evidence at issue. Roeder pled guilty to three counts of aggravated assault for an incident in which he allegedly threatened his wife, two stepdaughters, and four officers with a butcher knife. Subsequently, Roeder's wife

---

[4]     The district court noted three "procedural deficiencies" with Warden's motion for reconsideration. First, the Idaho Criminal Rules do not expressly provide for a motion for reconsideration. Second, Warden's motion for reconsideration could "be considered untimely in that it was filed more than fourteen days after" entry of the order denying his second motion for new trial. Finally, the district observed that Warden's appointed counsel had not signed the motion. On appeal, the State argues these procedural defects rendered it error for the district court to reach the merits of Warden's *Brady* claim. Because we hold Warden failed to show error in the district court's determination that the failure to disclose the jail logs was prejudicial, it is unnecessary to address these arguments.

obtained an "Incident Report" from the local sheriff's office authored by a dispatch officer who was not present at the crime scene. Adopting the trial court's reasoning that the report did "not represent all of what happened" on the date of the incident, this Court concluded the report was of limited use in impeaching one of the officers present at the scene who had initialed the report. *Id.* at 419, 162 P.3d at 798. Because the incident report was of minimal evidentiary value overall and cumulative to other evidence, we held the report could not be viewed as realistically altering Roeder's likelihood of success at trial. *Id.*

The district court observed that, similar to the incident report in *Roeder*, the jail logs Warden presented "were not prepared by the investigative officers" and did not "reflect all that happened during Warden's interactions with the investigative officers." The district court further noted that it found Warden guilty of felony DUI "mostly on [his] interactions with the arresting [officers], not on whether [Warden's] eyes were bloodshot or his speech was slurred." Consequently, the district court rejected Warden's *Brady* claim, concluding he "was not prejudiced by the failure of the State to produce" the jail logs.

Warden faults the district court for applying an incorrect legal standard to evaluate whether the failure to disclose the jail logs was prejudicial. According to Warden, the district court's omission of the word "substantial" from the description of its rationale for denying his newly discovered evidence claim shows the district court "did not newly analyze [his] claim of prejudice . . . but simply altered the language of its earlier order to meet the requirements of *Brady*."[5] This argument is meritless. As described above, the district court's evaluation of Warden's *Brady* claim analogizes to *Roeder*--a case analyzing whether withheld evidence satisfied the third prong of the *Brady* analysis (albeit in the context of a guilty plea, rather than a court trial). Under such circumstances, we will not infer from the district court's omission of a single word from its description of the rationale of a *prior* decision that the district court failed to "newly analyze" Warden's *Brady* claim.

---

[5]     As noted, the district court's order denying Warden's motion for new trial indicates that the jail logs did not "substantially undermine the [district court's] confidence in the guilty verdict." However, the order denying Warden's motion for reconsideration describes the district court as having "found that the newly discovered evidence did not put Warden's case in such a different light as to undermine confidence in the verdict."

Warden also faults the district court for citing *Roeder* when evaluating whether the failure to disclose the jail logs was prejudicial. Warden contends that *Roeder* is inapposite because it analyzed a *Brady* claim in the guilty plea context, rather than a guilty verdict following a court trial. When considering a *Brady* challenge to a guilty plea, the test of materiality (*i.e.*, prejudice) is whether there is a reasonable probability that, but for the State's failure to produce evidence, the defendant would not have entered the guilty plea but instead would have insisted on going to trial. *State v. Gardner*, 126 Idaho 428, 436, 885 P.2d 1144, 1152 (Ct. App. 1994). In the context of a guilty verdict, however, the defendant's burden is satisfied by showing a reasonable probability of a different verdict in that the State's suppression of evidence undermines confidence in the outcome of the trial. *Branigh*, 155 Idaho at 422, 313 P.3d at 750. However, the district court did not rely on *Roeder* for the applicable materiality standard. Rather, the district court analogized to the analysis of the probative force of the evidence at issue in *Roeder* to support the conclusion that the jail logs Warden presented held such minimal evidentiary value that (like the incident report in *Roeder*) they could not realistically be viewed as altering Warden's likelihood of success at trial.

Warden points out that the standards for relief on a *Brady* claim for a prosecutor withholding evidence is less stringent than the *Drapeau* standard for a new trial based on newly discovered evidence. As noted, *Drapeau* requires a defendant to show that the evidence "will probably produce an acquittal" while *Brady* provides that the defendant's burden is satisfied by showing a reasonable probability of a different verdict in that the suppression of evidence "undermines confidence in the outcome of the trial." *Branigh*, 155 Idaho at 422, 313 P.3d at 750. The latter is a lesser burden. However, Warden has failed to show that the jail logs satisfy this lesser burden. As previously discussed, the jail logs were of limited evidentiary value to Warden and could have resulted in the admission of additional testimony indicating he was impaired. Moreover, the most significant new information identified in the jail logs (*i.e.*, that the detention deputies did not observe Warden being unsteady or having bloodshot eyes and slurred speech) held little probative force relative to testimony of the arresting officers and the video evidence admitted during trial. Warden has failed to show that the district court erred by concluding that the failure to disclose the jail logs was prejudicial.

**IV.**

**CONCLUSION**

Warden has failed to show that the newly discovered evidence he presented would probably have resulted in an acquittal or raised a reasonable probably of a different verdict in his bench trial. Consequently, Warden has failed to show error in the denial of his newly discovered evidence claim or his *Brady* claim. Accordingly, the order denying Warden's motion for new trial is affirmed.

Judge HUSKEY and Judge BRAILSFORD, **CONCUR**.